## THE STATE OF KANSAS v. WILLIAM LILLIE.

1. INFORMATION, *Charging Embezzlement.* An information which, in one count, charges the defendant with embezzling certain property received by him as the "agent, servant, employé and bailee" of the owner, is not objectionable on the ground that it charges two separate and distinct crimes.

2. ———— The evidence discussed, and *held*, that the supreme court cannot say that the district court erred in holding that the evidence was sufficient to uphold the verdict of the jury.

*Appeal from Sedgwick District Court.*

INFORMATION for embezzlement, charging the appellant, *William Lillie*, with the embezzlement of certain United States treasury notes, and certain national bank notes, amounting in the aggregate to $150. At the September Term, 1878, of the district court, *Lillie* was tried, found guilty of the offense charged, and sentenced accordingly. He now appeals to this court. The facts are sufficiently stated in the opinion.

*W. E. Stanley,* for The State.

*H. G. Ruggles,* for the appellant.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution for the embezzlement of certain United States treasury notes and certain national bank notes, amounting in the aggregate to $150. The information charged the defendant with receiving said notes as the "agent, servant, employé and bailee" of the prosecuting witness. Before the trial, the defendant moved the court to "compel the state to elect whether the defendant be put to trial upon the charge of embezzlement as *agent, servant, employé,* or as a *bailee.*" The court however overruled the motion, and the defendant excepted, and now assigns such ruling for error. He claims that the information charges two separate and distinct crimes—one for embezzlement as an agent, servant and employé under § 88 of the crimes and punishments act (Laws of 1873, pp. 177, 178), and the other for embezzlement as a bailee under § 90 of said act. (Gen. Stat. 335.) The information was intended to be drawn under § 88, and whether it charges any crime or not under § 90, it certainly does not charge any crime not included in said § 88. It really charges only one crime—that of embezzling notes (substantially money) held by the defendant as the "agent, servant, employé and bailee" of the prosecuting witness— unless this one crime includes within itself the less crime of embezzling the notes as the bailee only of the prosecuting witness; and in such a case no objection can be urged against the information, for an information may in a single count charge several offenses, provided that one of such offenses includes all the others. This is well illustrated by an information charging murder in the first degree, for the single charge of murder in the first degree may include all the several degrees of felonious homicide. That the defendant held the money as "agent, servant, employé and bailee," and that he converted the same to his own use, must for the purposes of said motion be admitted. And could he, by so holding and using the money, be convicted and sentenced for two or more separate and distinct offenses? Could he be imprisoned

the aggregate amount of the time prescribed for two or more offenses, instead of for the time prescribed for one offense only? We think not.

I. The holding of the money was a single holding, and the conversion was a single conversion, although the defendant held the money in the compound capacity of "agent, servant, employé and bailee;" and although perhaps he might be convicted under either of said sections, he could not be convicted under both, so as to receive a double punishment. We think it is true, as is claimed by the defendant, that a person who is not an agent, servant, or employé, may be able to commit the crime of embezzlement as a bailee under § 90, but we do not think that a person who is not a bailee could commit the crime of embezzlement as an agent, servant or employé. Whenever a person holds specific money belonging to his employer, holding it as the agent, servant and employé of such employer, and holding it in such a capacity that he might commit embezzlement with reference thereto, he also holds it in the capacity of a bailee. This is in accordance with the definitions of the words "bailee" and "bailment," as given by Blackstone, Story, Edwards and Bishop. (2 Black. Com. 451; Story on Bailments, § 2; Edwards on Bailments, § 2; Bishop on Statutory Crimes, § 423.) And we think this is true whether such a bailee could be convicted of embezzlement as a bailee under § 90, or not. For if he could be so convicted, then the one offense would be included in the other; but if he could not, then the word bailee, as used in said information, would be an unnecessary though not an improper word. For when a person is charged with embezzling his employer's goods, as an "agent, servant or employé," he is also necessarily charged with embezzling them as a *bailee*, whether the word "bailee" is used or not; and the mere use of the word bailee would certainly not destroy the validity of an otherwise good information. Mr. Bishop, in his work on Statutory Crimes, § 424, uses the following language:

"Where the prosecutor had given the prisoner money to

buy coals, which the latter was to bring in his own cart to the former for hire, and the prisoner bought the coals in his own name, and on his way to the prosecutor's abstracted some of them for his own use, it was held that . . . here was a *bailment* of the coals, which in law were the prosecutor's, though they had never come into his own hands, and here was a sufficient act of conversion. So if a carrier is employed to deliver a boat's load of coals, in his own cart, to persons named in a list, and he fraudulently sells some of them and takes the money to his own use, he may be convicted of the larceny of these coals as a *bailee*. And it was laid down in another case that a carrier who, receiving *money* to procure goods, obtains the goods which he duly delivers, but *fraudulently retains the money*, may be convicted of the larceny of the *money* as *bailee*." See also, 2 Wharton's Crim. Law, § 1955.

II. The defendant did not ask the court to give any instructions to the jury, and to those given no exceptions were taken; but even if exceptions had been taken, we do not think the judgment could be reversed because of any erroneous instructions.

III. Neither can we say that the court below erred in overruling the defendant's motion for a new trial. We have already sufficiently mentioned the instructions. We shall now proceed to consider the evidence. It seems from the evidence that the prosecuting witness (a woman) furnished the defendant with $150, in United States treasury notes and national bank notes, with which to purchase for her a certain lot in Wichita, Kansas. The defendant never purchased the lot nor returned the money, but claimed that he had either lost the same or that it had been stolen from him. Whether the money was so lost or stolen, or was converted by the defendant to his own use, was the only material question of fact submitted to the jury about which any serious doubt can be entertained. The defendant testified on the trial that he did not convert said money to his own use, but that it was either lost or stolen from him; and there was no evidence introduced on the trial except circumstantial evidence showing otherwise. The money was delivered by the prosecuting

witness to the defendant about 9 o'clock on the morning of the 23d of August, 1878. He first went to Ritter's saloon, and then to the office of the register of deeds to see that the title to the property which he was about to purchase was all right. When he got there he found that he did not have the numbers of the property. He then went to the office of the agent who had the property for sale, and got the numbers. He then went to Ritter's saloon, where he commenced to drink intoxicating liquors. He arrived at Ritter's saloon about ten o'clock, and remained there about an hour. He then went to Schutzler's saloon, where he continued drinking, and remained there about half an hour. He then went to Lemkin's saloon, where he still continued drinking; but about 2 o'clock in the afternoon, being very drunk, he went to sleep in a chair. How long he slept is not shown. He testified that when he waked up he felt for the money and found that it was gone. From the time that the defendant entered Ritter's saloon in the morning until he went to sleep in Lemkin's saloon in the afternoon, Jacob Ritter was with him, and he did not see him have any money, except some change, with which he purchased drinks. After he waked up in Lemkin's saloon, he remained there until five o'clock P. M., and it does not seem that in the mean time he informed any person that he had lost said money. At five o'clock, or about that time, the prosecuting witness becoming very uneasy at the defendant's failure to return and to inform her what he had done, started to hunt for him. She found him in Lemkin's saloon, and finding that he had not purchased the property for her, she demanded a return of her money. He then felt in his pockets, and said that he had lost it, or that it had been stolen from him. She then called a policeman and had him arrested, and he still failing and refusing to account in any other manner for said money, the county attorney prosecuted this action. Upon the foregoing facts, proved in much greater detail than we have stated them, the jury found the defendant guilty, and the court below sustained the verdict. The jury evidently did not believe the defendant's evidence concerning

the disposition of said money. We might also here state that the prosecuting witness was the keeper of a house of prostitution, and the defendant seems to have been one of her particular friends. There were also several little things proved on the trial which we have not stated, and which might properly have had weight with the jury in causing them to return the verdict they did. Taking all the evidence together, we cannot say that the court below erred in sustaining the verdict of the jury. The circumstantial evidence tending to show that the defendant converted the money to his own use, and that he did not lose it, and that it was not stolen from him, was probably sufficient to overcome his own direct evidence to the contrary. The defendant testified that he was to take the deed to said lot in his own name. Now suppose that this was so, it would not make said money his. Until he used the money as directed by the prosecuting witness, the money was hers, and she could have revoked her orders, and have ordered its return. Suppose that the agent had refused to sell, or suppose that the defendant had found, when he went to the register's office, that the title to the property was not clear: the purchase would not have been made, and the money should then have been returned. The statutes with reference to trusts, we think, have no application to this case; but still, with reference to trust estates, see the latter part of § 8 of the statute concerning trusts and powers: Gen. Stat. 1097.

Some of the questions involved in this prosecution have been settled by the decision in the case of *The State v. Smith*, 13 Kas. 274. That was a criminal prosecution under said § 88, charging the defendant with embezzling various funds (including *money*) coming into his hands as county treasurer.

The judgment of the court below will be affirmed.

All the Justices concurring.