STATE OF MINNESOTA *vs.* ANNA BRESLAND.

Submitted on briefs Nov. 20, 1894. Reversed Dec. 6, 1894.

No. 9025.

**Examination of a juror on a challenge for actual bias.**

In the impaneling of a jury on the trial of an indictment charging the defendant with keeping a house of assignation, she challenged a juror for actual bias, and, in examining the juror on the trial of the challenge, defendant's counsel admitted that defendant kept the house specified at the time charged, and asked the juror if he had heard any statement as to the character of the house, from which he had formed an opinion as to its character. The trial court held the question incompetent. *Held* error.

**Same—to determine whether or not to challenge peremptorily.**

The juror served, and it did not appear that the defendant exhausted her peremptory challenges. *Held*, such error was not without prejudice; that it prejudiced defendant in exercising a peremptory challenge; and even though she had no right to any such examination for the mere purpose of a peremptory challenge, yet for the purpose of attempting to excuse such error she must be considered as having a right to the benefit of this examination in exercising her peremptory challenge. *State* v. *Lawlor*, 28 Minn. 216, and *State* v. *Kluseman*, 53 Minn. 541, distinguished.

**Reputation of a house as one of assignation.**

On the trial of such indictment, *held*, evidence of the reputation of the house as a house of assignation is competent, at least in aid of corroboration of other evidence.

Appeal by defendant, Anna Bresland, from a judgment of the District Court of St. Louis County, *J. D. Ensign*, J., rendered June 29, 1894, convicting her of the crime of keeping a house of assignation in the city of Duluth. On this conviction she was sentenced to be punished by confinement in the state prison at Stillwater at hard labor for the period of four years.

The defendant upon impaneling the jury challenged two jurymen for bias and cause and upon their being sworn upon their *voir dire*, showed by them that they were so well acquainted in the city that they were liable to know the location of the house alleged to have been kept by her, but that they did not know the defendant and knew nothing of the case against her. Defendant

then asked of each if he had heard any statement concerning the character of the house which her counsel admitted had been kept by her from April 20, 1894, to the date of the alleged commission of the offense, whereby he had formed any opinion as to the character of such house as being a house of assignation, to which question the State then and there objected. The objection was sustained, the court holding that the defendant in her questions must be confined to opinions formed by the proposed jurymen from what they had heard, as to the innocence or guilt of the prisoner. To each of these rulings, defendant excepted whereupon one of the jurymen so challenged was accepted and the other was challenged peremptorily by her.

*White & McKeon*, for appellant, cited *State* v. *Smith*, 29 Minn. 193; *State* v. *Boardman*, 64 Me. 523: *Wooster* v. *State*, 55 Ala. 217; *Handy* v. *State*, 63 Miss. 207; *Henson* v. *State*, 62 Md. 231; *Cadwell* v. *State*, 17 Conn. 467; *Toney* v. *State*, 60 Ala. 97; *State* v. *Lyon*, 39 Ia. 379; *United States* v. *Jourdine*, 4 Cranch C. C. 338; *State* v. *Foley*, 45 N. H. 466; *People* v. *Mauch*, 24 How. Pr. 276; *Commonwealth* v. *Stewart*, 1 Serg. & R. 342.

*H. W. Childs*, Attorney General, *Geo. B. Edgerton*, his assistant, and *Chas. C. Tear*, County Attorney, for the State, cited *State* v. *Lawlor*, 28 Minn. 216; *State* v. *Kluseman*, 53 Minn. 541; *State* v. *Smith*, 29 Minn. 193; *People* v. *Rowland*, 5 Barb. 449.

CANTY, J. The defendant was convicted in the court below on an indictment under Penal Code, § 281, charging her with keeping an assignation house in the city of Duluth, was sentenced, and appealed to this court.

It appears by the bill of exceptions that, when the petit jury was being impaneled, the defendant challenged two of the proposed jurors for actual bias. In the examination of each juror as a witness under oath, he stated that he did not know the defendant, and knew nothing against her. He was then asked if he had heard any statement concerning the character of the house alleged to have been kept by the defendant, by reason of which he had formed an opinion as to the character of such house as being a

house of assignation. At the time of asking the question, defendant's counsel admitted that defendant kept the house specified at the date charged in the indictment, and for a month immediately prior thereto. The state objected to the question, and the objection was sustained by the Judge, who held that the defendant, in her questions, must be confined to questions as to opinions formed from what the juror had heard as to the guilt or innocence of the defendant. To these rulings defendant excepted, and this is assigned as error. We are of the opinion that it was error. The defendant was entitled to ask the questions as she did ask them. She was not obliged, on the court's suggestion, to adopt as a question what in that case might be a meaningless formula, or might elicit only an evasive or unsatisfactory answer. From the admission of counsel, the only question to be tried was whether the house in question was an assignation house at the time in question, and she had a right to strip her question of all immaterial matters, and so ask it that the answer would be in point; and this she did. One of said two jurors was accepted and served on the jury, and the other was by defendant challenged peremptorily.

It does not appear by the settled case that the defendant exhausted her peremptory challenges, and on the authority of *State* v. *Lawlor*, 28 Minn. 216, (9 N. W. 698,) and *State* v. *Kluseman*, 53 Minn. 541, (55 N. W. 741,) the attorney general urges that it was error without prejudice. We are not disposed to question the authority of those cases, but they are not cases where the defendant was prevented from discovering, by the use of proper questions, the bias, prejudice, or leanings of the juror. The error, if any, in those cases, was in retaining in the one case, and rejecting in the other, the juror after the examination was closed. The defendant in each case could intelligently exercise his right of peremptory challenge,—in the one case on the juror retained, and in the other case on jurors objectionable to him subsequently drawn.

But in the case at bar the defendant could not intelligently exercise her right of peremptory challenge. She not only was prejudiced in her right to challenge for cause, but also in her right to challenge peremptorily. Conceding that she has no right

to examine the juror for the mere purpose of ascertaining whether it is advisable to challenge him peremptorily, yet she has a right in good faith to challenge for cause, and, if it is found not true, to avail herself of the facts brought out in the trial of that challenge in deciding whether she will challenge peremptorily; and if this right is left her, and she does not have occasion to exhaust her peremptory challenges, she is not prejudiced.

It is true that the right to use the information acquired in the trial of a challenge for cause, in deciding whether to make a peremptory challenge, is a mere incidental right, but in the way the question arises it is a substantial right. The question arises in an attempt to excuse the error of the court. The excuse is that the defendant is not prejudiced, and to that it is a sufficient answer. The excuse is a sort of equity, and is met with a sort of equity entitled to just as much consideration. The defendant had a right to a fair and impartial jury. The excuse is that she had a fair and impartial jury, and therefore was not prejudiced by the error of the court. The answer to this excuse is that she does not know whether she had or not. She does not know whether she was convicted by the evidence produced in open court, or on the previous knowledge, information, or opinions of the jurors, and was not permitted to find out. If she had been permitted, as she should have been, to examine the jurors, and ascertain which ones were fair and impartial and which were not, and been allowed to strike off those who were not, she would not be prejudiced, whether she struck them off by one kind of challenge or the other; but by reason of the error she was not permitted to ascertain which she should strike off, or to ascertain whether she had an impartial jury or not, and we should not presume that she had such a jury. We are not unmindful of the fact that in the examination of jurors, especially in criminal cases, lawyers are often inclined to abuse their privileges; and, while the trial court is allowed much discretion on such examinations, there is a limit to that discretion. For this error the judgment appealed from must be reversed.

It is also assigned as error that the court permitted evidence to be given of the reputation of the house as an assignation house. We are of the opinion that the evidence was competent, at least

in aid or corroboration of other evidence. An assignation house is only one form of a house of ill fame, and, on a charge of keep-ing a house of ill fame, evidence of reputation is competent. *State* v. *Smith*, 29 Minn. 193, (12 N. W. 524.) Such evidence is not mere hearsay. Reputation is often admissible to prove a continued practice, when it would not be to prove a single act. It is often competent evidence of a continuing condition or a continued rep-etition of the same or similar acts or practices, when it would be mere hearsay as proof of a single act or occurrence. Thus, repu-tation is competent evidence of good or bad character, of solvency or insolvency, of custom, usage, etc. In all these cases the con-tinued nature of the fact to be proved, and the necessities of the case, render competent evidence of reputation.

Judgment is reversed, and a new trial ordered.

GILFILLAN, C. J., absent on account of sickness, took no part.

.(Opinion published 61 N. W. 450.)

