## STATE v. EDWARD O. FELLOWS.[1]

### Nos. 14,853—(34).

### May 29, 1906.

#### Criminal Law—Return on Appeal—Clerk's Fees.

Section 10, c. 333, p. 580, Laws 1903, relating to fees of clerks of the district court in counties having two hundred thousand inhabitants, has no application to returns on appeals to this court in criminal cases. This court will order such return in criminal cases to be made without payment of clerk's fees by the appellant, if he is unable to do so.

### July 27, 1906.

#### Indictment—Grand Larceny.

An indictment charging defendant with having unlawfully and wrongfully appropriated to his own use certain money and property in his hands and under his control as "agent, servant, and bailee," *held* sufficiently to charge the crime of grand larceny by an agent.

#### Surplusage.

The word "bailee," following "agent and servant," may be rejected as surplusage.

#### Meaning of Written Contract.

All questions as to the meaning and legal effect of written contracts are for the court to determine, except where the writing is uncertain and ambiguous to an extent to justify extrinsic evidence to explain it, when they should be sent to the jury, if the evidence is conflicting.

[1]Reported in 107 N. W. 542; 108 N. W. 825.

**Construction of Contract.**

The contract involved in this case was not ambiguous in its terms, and the trial court properly construed it as creating the relation of principal and agent between the parties thereto.

**Evidence.**

Evidence considered, and *held* to sustain the verdict.

Appeal by defendant from an order of the district court for Hennepin county, John Day Smith, J., denying a motion for a new trial, after a trial and conviction of the crime of grand larceny in the first degree. Upon petition of defendant an order was issued from the supreme court requiring the clerk of the district court to show cause why he should not file a copy of the settled case as a part of his return on the appeal, without payment of his fees therefor by defendant. Order to show cause made absolute. Order denying new trial affirmed.

*Francis H. Clarke* and *Harry S. Swensen,* for appellant.

*Edward T. Young,* Attorney General, *Al. J. Smith,* County Attorney, *John F. Dahl,* Assistant County Attorney, and *John W. Arctander,* Special Assistant to the Attorney General, for the State.

PER CURIAM.

Order on the clerk of the district court of the county of Hennepin to show cause why he should not be required to send to this court as part of his return a certified copy of the settled case herein on file in his office.

It appears from the moving papers that the defendant herein was convicted of a felony and sentenced to the state prison for the term of one year, that he has perfected an appeal from such judgment to this court, and that he is without any means whatever to pay the clerk of the district court the fees for making the necessary return to this court. These allegations of the petition are not controverted, but it is the contention of the clerk that he is not authorized to certify the return unless the fees therefor are first paid, as provided by section 10, c. 333, p. 580, Laws 1903, which provides that,

In all criminal proceedings in said court unless otherwise ordered by said court the clerk shall demand and receive the following fees: For certified copies of files and records the same fees as are provided in civil matters.

And, further, that if the defendant cannot pay the fees he must secure from the district court an order directing the return to be made to this court without payment of fees.

Upon an appeal being perfected to this court jurisdiction to compel a return from the district court to this court passes under the exclusive control of this court, although jurisdiction over the appeal is not complete, except for the purpose of dismissing the appeal, until a return has been filed. Briggs v. Shea, 48 Minn. 218, 50 N. W. 1037. It is clear that, if the determination of the question whether a return to this court in any particular case should be made or not depended on an order of the district court to that effect, it would follow that whether this court could exercise appellate jurisdiction vested in it by the constitution would depend upon the discretion of the district court. Section 10, supra, then, must be construed in harmony with the constitution and the general statute in reference to returns to the supreme court in criminal cases. So construing it, we hold that it has no application to returns on appeal to this court in criminal cases.

The only remaining question is, has this court the power to direct the clerk to make the necessary return without payment of his fees by appellant? Prior to 1866 the clerk of the district court upon an appeal to the supreme court being perfected in either a civil or criminal case, could only be required to make the proper return to this court upon payment of his fees therefor by the appellant. R. S. 1851, c. 81, § 16; P. S. 1849–1858, c. 71, § 16. A change was made as to returns on appeals in criminal cases in 1866, and ever since then the law in this respect has been and now is this:

> Upon an appeal being perfected or a writ of error filed with him, the clerk shall transmit to the supreme court a copy of the judgment roll and the bill of exceptions, if any. G. S. 1866, c. 117, § 5; R. L. 1905, § 5403.

The settled case is properly a part of the judgment roll. Dunnell, Minn. Pr. § 1764. It necessarily follows, from a consideration of the present statute and its history, that this court has the power and that it ought to compel a clerk of the district court to make a return on an appeal in a criminal case without the payment of his fees therefor by the appellant, if he is unable for any reason to do so.

It is ordered that the clerk of the district court of the county of Hennepin, without unnecessary delay, certify to this court as a part of his return a copy of the settled case herein on file in his office without payment of his fees therefor by the appellant herein, and, further, that a certified copy of this order be delivered to such clerk.

The appeal having been argued and submitted, the following opinion was filed on July 27, 1906:

BROWN, J.

Defendant was convicted of the crime of grand larceny, and appealed from an order denying his motion for a new trial. Numerous assignments of error are made and discussed in the briefs, the more important of which will be considered in their order.

1. It is contended that the indictment fails to state facts sufficient to constitute a public offense. This objection was made in the court below at the opening of the trial by an objection to the admission of any evidence under it. The objection was overruled, and the ruling is assigned as error.

The indictment charges that defendant, being "the agent, servant, and bailee" of F. H. Peavey & Co., a copartnership, doing business in the city of Minneapolis, converted to his own use certain moneys in his possession and control belonging to that firm, contrary to the form of the statute, etc. It is urged in support of the objection to the indictment that inasmuch as it charges defendant with having possession and control of the money alleged to have been converted as "agent, servant, and bailee," a case of bailment is presented, and the indictment should have alleged the conditions of the bailment or the purpose for which the money alleged to have been converted was entrusted to defendant. State v. Holton, 88 Minn. 171, 92 N. W. 541, is relied upon to sustain this position. The objection to the indictment was properly overruled. The case just referred to is not in point; there a case of bailment pure and simple was presented, and the court rightly held that the terms and conditions of the bailment should have been alleged, to the end that the defendant might be informed of the nature of the charge made against him. The case at bar, however, is not one of bailment; but on the contrary, solely one of agency. The indictment charges defendant with converting to his own use certain moneys

which he held as the agent and servant of the copartnership of Peavey & Co. The addition of the word "bailee" following "agent and servant," does not make the case one of bailment. That word was evidently used in the sense of agent, not to indicate or charge that the relation between defendant and Peavey & Co. was that of bailor and bailee. It might well have been omitted from the indictment; it performs no office in the charging part, and may be rejected as surplusage. State v. Thompson, 28 Ore. 296, 42 Pac. 1002; State v. Comings, 54 Minn. 359, 56 N. W. 50; State v. Lillie, 21 Kan. 728.

2. Defendant moved to dismiss the prosecution when the state rested, and at the close of the trial requested the court to instruct the jury to return a verdict of not guilty; both of which were refused by the trial court. Involved in this branch of the case are some alleged errors in the rulings of the court respecting the relationship existing between defendant and Peavey & Co., and in its instructions, and refusals to instruct the jury.

On this subject the court held, and so charged the jury, that under the contract existing between the parties, made up of Exhibits A and B, hereinafter referred to, defendant was the agent of Peavey & Co., and that whatever property or money came into his possession by virtue of the business conducted under the contract belonged to that firm, and defendant held it as their agent. It is insisted by defendant that no such relation existed between the parties, at least, that the question was, under the evidence, one of fact for the jury to determine, and that the court erred in not so ruling at the trial. It is also strongly urged that defendant was not in fact or law the agent of Peavey & Co. at all, but that he himself was the owner of all the property connected with the business conducted by him, and that the true relation between the parties was that of debtor and creditor; that whatever property Peavey & Co. delivered to him in connection with the business conducted under the contract was in legal effect a sale. These several contentions involve the merits of the case and present the principal errors complained of, the consideration of which has necessitated a careful examination of the voluminous typewritten record, and has resulted in a conclusion adverse to defendant.

It appears from the record, and the jury were justified in finding, that in August, 1903, defendant embarked in the business of dealing

in coal in a small way in the city of Minneapolis, and continued therein until some time in April, 1904, when he entered into an oral agreement under which he became the agent of Peavey & Co. for the sale of its coal, the business being conducted in his name as proprietor for the reason that Peavey & Co. did not wish their connection with the retail coal business in Minneapolis to become known to the coal trust. The business under this arrangement prospered and increased in volume, when in July a representative of Peavey & Co. suggested to defendant that the agreement under which the same was being conducted ought to be expressed in some written contract, to which defendant assented. Whereupon the following contract was prepared and signed by both parties:

### Exhibit A.

This agreement made this 18th day of August, A. D. 1904, by and between F. H. Peavey & Company, and E. O. Fellows, all of Minneapolis, Minn., witnesseth: That whereas, F. H. Peavey & Company, among other pursuits, are now engaged in selling coal in the city of Minneapolis, and now have on hand at Fourth avenue North and Seventh street, on Great Northern Tracks, Minneapolis, about 4,244 tons of coal which, with that already sold, the proceeds of which have not been collected, amount in value to the sum of $29,769.86; and whereas, F. H. Peavey & Company, have heretofore employed said E. O. Fellows, and he has been engaged under this employment in making the sale of the coal above mentioned; and whereas, they desire to continue him in their employment for the purpose of selling coal so long as the services of such agent are mutually satisfactory; and whereas, they desire that such sales shall be made in his own name so long as he gives them such security against loss as they deem sufficient; and whereas, said E. O. Fellows, desires to continue in the service of said F. H. Peavey & Company, in selling such coal and such other coal as may from time to time be furnished them:

Now, to effectuate the purposes of the parties hereto, and in consideration of the mutual promises of each to the other, it is hereby stipulated as follows:    (1) E. O. Fellows hereby

promises that he will continue in the service of said F. H. Peavey & Company and will give his entire time and attention to the sale of the coal above mentioned and such other coal as they may furnish from time to time, and such other duties as pertain to said business. (2) He further promises that he will sell said coal in his own name in the usual way, not over thirty days time, and will pay the proceeds over to F. H. Peavey & Company as soon as the same are received, and will employ due diligence in collecting such as have been or may be sold on time. (3) He further promises that in order to secure F. H. Peavey & Company against any loss that may arise by reason of the fact that he is allowed to sell said coal in his own name, or by reason of any neglect or faithlessness on his part, that he will assign to them policies of life insurance that he now carries to the amount of $55,000 and he will also pay the premiums accruing thereon promptly at maturity, and deliver the receipts for such payments to F. H. Peavey & Company so that they may know that he continues to carry such insurance. (4) He further promises that he will from time to time, on demand, report the amount of sales made and outstanding, the amount of cash received and on hand, and the amount of coal on hand; and without any demand that he will on the tenth day of each calendar month make a full and detailed statement of the condition of the business intrusted to him. (5) He further promises that he will keep books showing the actual condition of the business, and that they shall be subject to inspection at any time by any agent of F. H. Peavey & Company who is directed or authorized to make such inspection. (6) F. H. Peavey & Company hereby promise that for such services as he may perform under this contract that he shall have all for which said coal may sell, less the cost of said coal, plus ten cents per ton, and out of the amount so received by him he shall pay all expenses including the sum necessary to keep said coal fully insured and interest at six per cent. upon the amount invested in said coal. (7) They further promise him after the present stock has been reduced to the value of $10,000 they will furnish for sale to him from time to time such additional

coal as may be needed in the business. (8) It is further mutually agreed that either party hereto may terminate this contract upon giving to the other in writing five days' notice of such termination, except on unfulfilled contracts. (9) At the termination of such contract E. O. Fellows shall fully account to F. H. Peavey & Company for all of their property then in his custody, delivering to them all the coal remaining unsold, paying them all money then on hand and transferring to them all claims or evidences of debt that he may hold against others for coal sold, and deliver all books and other property belonging to them.

In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

F. H. Peavey & Company.<br>E. O. Fellows.

In the presence of C. W. Lane.

The evidence also justified the jury in finding that it was the understanding at the time this contract was signed that defendant should not draw from the business as profits or remuneration for services any moneys in excess of $150 per month, and that this condition was inadvertently omitted from the written contract by the person who prepared it. But it was referred to when that document was signed, and to cover the point the following writing was subsequently signed and delivered to Peavey & Co.:

## Exhibit B.

Memorandum. I hereby agree not to withdraw from the coal business now being conducted in Minneapolis in my name, but which I recognize as the business of F. H. Peavey & Company in accordance with a contract (made between us this day) as profits, or remuneration for my services in connection with the said business, any moneys in excess of $150.00 per month.

Dated at Minneapolis, Minn., August 18th, 1904.

[Signed]                                        E. O. Fellows.

In presence of C. W. Lane.

It is clear that the court did not err in holding that these writings created the relation of principal and agent between the parties. The contract expressly so stated, and its recitals are fully corroborated by evidence dehors the writing. One important item of corroborative evidence is the express declaration or statement by defendant himself made in an application to the National Surety Company for a fidelity bond in connection with the business, in answer to a question respecting the business he was engaged in, that he was a selling agent for Peavey & Co. at Minneapolis. Other extraneous items of evidence tend in the same direction. It is elementary that all questions as to the meaning and legal effect of written contracts are for the court to determine, except, perhaps, in cases where the writing is ambiguous and extrinsic evidence is admissible to prove the intent of the parties, when it should be sent to the jury if the evidence is conflicting. Dodge v. Rogers, 9 Minn. 209 (223). The written contract here before us is in no proper view ambiguous or uncertain, and the court properly refused defendant's request to submit its construction to the jury, and rightly held, as a matter of law, that the relation of principal and agent was established.

Nor did the court err in refusing to direct a verdict of acquittal; the evidence is ample to sustain the verdict of guilty. We need not review the evidence at length. It is too voluminous, and it would serve no useful purpose to enter into a general discussion of its probative force and effect. Starting with the proposition that defendant was the agent of Peavey & Co., acting as such under a written contract containing the terms, conditions and restrictions of the agency, we have little difficulty in reaching the conclusion that the jury properly applied the evidence. Peavey & Co. furnished defendant with large quantities of coal for sale, and he sold the same to numerous customers; the business was conducted in his name, for reasons already stated, but his agency contract required him to keep books of account, which were open to the inspection of Peavey & Co. at all times, and to make reports to the firm from time to time of the condition of the business.

It was understood and agreed between them that all moneys derived from the sale of coal should be deposited in the First National Bank of Minneapolis; that defendant should keep a balance on deposit in that bank for the payment of expenses; that after paying the ordinary run-

ning expenses he should turn over to Peavey & Co. daily all in excess of the amount required to be kept on deposit, less $150 per month for his own expenses. He apparently faithfully complied with his contract until some time in December, 1904, when he violated it by appropriating money coming into his hands to his own use. He withdrew from the funds of the business more than necessary to pay the expenses and the $150 per month allowed him, and deposited large sums in his own name in the Swedish-American Bank, which he later withdrew and applied to the payment of his private debts. The deposits in that bank are not denied; nor is it disputed that the money so deposited came from the business conducted under this contract. He justified his action on the claim, and he asserts it in this court, that the business and all moneys derived therefrom belonged to him, and that he had the right to deposit the money wherever he chose. This position, in view of the construction which must be, and has been, given to the contract, is wholly untenable.

Of course, there can be no conviction in such a case as this merely by showing an unsettled account between principal and agent, as held in State v. Culver (Neb.) 97 N. W. 1015. The state must, in order to justify conviction, prove beyond a reasonable doubt the wrongful and unlawful appropriation of funds belonging to the principal. The evidence fully supports the contention of the state in this respect. Under the contract in question, the property involved in this business, as well as all moneys received from the sales made by defendant, over and above the ordinary running expenses and the sum of $150 per month, belonged absolutely to Peavey & Co., and, by appropriating it to his own use, defendant was guilty of larceny. If defendant was entitled to any part of such proceeds under the head of "profits" contemplated by the contract, he could not determine arbitrarily what they were, and without notice to the firm divert them contrary to the terms of the contract. This feature of the case is covered by section 6710, G. S. 1894, which provides that it shall be no defense to a prosecution under the second subdivision of section 6709, under which defendant was indicted, that the accused was entitled to a commission out of the money or property appropriated, or that the money or property was partly the property of the accused and partly the property of another. Indeed, defendant did not claim the money appropriated by him as his share

·of the profits of the business; but, on the contrary he claimed that the money belonged to him, and that Peavey & Co. had no right or claim to it. This, as we have seen, is without merit. Upon the whole record we are therefore satisfied that the evidence justified the conviction ·of defendant, and that there were no errors in any of the rulings of ·the court upon this branch of the case.

3. We have examined all other assignments of error not covered by what has already been said, with the result that no prejudicial error is ·disclosed, either in the admission or exclusion of evidence, or in the ·instruction or refusal to instruct the jury.

Order affirmed.