## STATE v. HENRY MULROY.[1]

### June 30, 1922.

### No. 22,742.

**Conviction not reversed for error when defendant could not have been prejudiced—peremptory challenge of jurors.**

1. A conviction in a criminal case should not be reversed because of error, if it appears from the whole record that the defendant could not have been prejudiced. The evidence of guilt in this case is so conclusive that it may fairly be said that the restriction of the examination of jurors for the purpose of enabling defendant to exercise his peremptory challenges could not have prejudiced defendant.

**Charge to jury not prejudicial.**

2. There is no prejudicial error in the charge of the court.

Defendant was indicted by the grand jury of Nobles county charged with the crime of illegally manufacturing intoxicating liquor, tried in the district court for that county before Nelson, J., and a jury which found him guilty as charged in the indictment. From the judgment entered pursuant to the verdict and sentence, defendant appealed. Affirmed.

[1]Reported in 189 N. W. 441.

*Mead & Bryngelson*, for appellant.

*Clifford L. Hilton*, Attorney General, *C. H. Christopherson*, Assistant Attorney General, and *John F. Flynn*, County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of the crime of illegal manufacture of intoxicating liquor and he appeals.

The evidence is ample to sustain the verdict of guilty. Defendant assigns certain errors in the conduct of the trial.

1. Exception is taken to the limitation placed upon the examination of prospective jurors. Objections were made and sustained to these questions: "Are you or have you ever been a member of any society or company or association which had for one of its objects the prohibition of the liquor traffic?" 'Did you attend a meeting held in this city lately at which the matter was discussed of the enforcement of the law in these cases now on trial of which this case is one?" "Have you taken any part of any kind, either as an individual or as a member of any society, for the enforcement of the liquor laws in this community?" The court was advised that the questions were asked in order to enable defendant to intelligently exercise his peremptory challenges. Doubtless the court should have permitted the jurors to answer these questions. The court was making a laudable effort to expedite the examination of jurors so often too protracted and in so doing restricted too much the examination. Still the case should not be reversed if it appears from the whole record that the defendant could not have been prejudiced. State v. Williams, 96 Minn. 351, 105 N. W. 265. There is no showing or intimation that the jury which tried defendant was not in all respects a fair jury, nor that the examination if permitted would have elicited any facts that would have made a peremptory challenge of any juror desirable. And in view of the conclusive character of the evidence in this case it is impossible to see how the defendant could have been prejudiced, for fair men could hardly arrive at different conclusions as to defendant's guilt.

The sheriff and three deputies and a Federal agent came to de-

fendant's house with a search warrant. They caught defendant in the possession of a fully equipped still fitted up in connection with a kitchen stove. At the sight of the officers defendant hastened the still into the bedroom where he concealed it behind the bed and covered it with a fur coat. In the kitchen were two 52-gallon barrels of "mash," highly charged with alcohol and in condition to be distilled into whiskey, and also 5½ gallons of finished whiskey containing more than 46 per cent of alcohol. Defendant's explanation of the possession of all this was simply ludicrous. The still, which he called a "fruit cooker," he said he used to distill water for his family. The whiskey with 46 per cent alcohol he said was simply water, colored for the children to drink, colored with "extract of rye" that "the Mrs." had put in "so the children would drink it and make it little different taste," because the distilled water "would taste kinda flat and sickening." The "mash," so heavily charged with alcohol, was simply cracked corn and a little pea meal in water which he prepared for his hogs, and he kept it in the house "so the Mrs. could throw the slop away into these barrels" and would not have to carry it out of the house. It is significant that "the Mrs." was not called as a witness to corroborate this story nor were any of the children.

The evidence of guilt is so clear and overwhelming that that we are of the opinion that the restriction of the examination of the jurors does not warrant a reversal.

2. Exception is taken to some portions of the charge of the court.

We have examined the charge with care. At its inception the court emphasized the presumption of innocence which follows the defendant through every stage of the trial until evidence establishes his guilt beyond a reasonable doubt. He admonished them that they were the sole judges of the disputed facts, and that they must not take it from anything he might say that he indicated to them what evidence they should accept, for any dispute was for them alone to decide. He then said: "In view of the extraordinary argument that has been made in this case I deem it proper for me to refer to some of the matters. It has been stated to you that every person should be secure in his home. Now  *  *  *  I want to charge you that there

is no evidence of any right of Mr. Mulroy's having been violated by any of these officers."

He then said they had had their attention called to the fact that state and national government is pitted against defendant and said while this is true every safeguard is thrown around the accused so that all his rights are protected, that an innocent man is protected by our courts. He then said statement had been made that "not all of the evidence found was brought into this case and that should weigh with you. Now, gentlemen, that should not weigh in your mind the least. Under the Federal law it is the duty of the Federal officer when he finds any of this liquor that has been manufactured in violation of the law * * * to destroy all of that liquor except what he wants to preserve for evidence in the case of a prosecution. It was not necessary for the state to bring in those 140 gallons of mash. * * * It * * * would not have been allowed. * * * All that was necessary for the state to bring in was enough to satisfy disinterested jurors of the fact that it was liquor that they found there." He then said something has been said about a search warrant as if that had been violated. That was not from this court and was returnable to another court and the presumption is that everything that was required was done in that court.

He charged that much had been said about the chemist's testimony and after referring to the conflict of testimony and charging the jury that it was for them to determine what to receive or to discard, or to reject, he told them if there was any evidence to contradict that of the chemist then they had a right to reject his testimony, otherwise they had "no right to reject the testimony of him or any other witness unless it is contradicted."

Some of the language might better have been omitted. Reference to the argument as "extraordinary argument" should have been omitted, though it did appear that some of the argument was unfounded. The statement that the Federal law required the officers to destroy any part of the liquor taken was erroneous, except as they might have an order of court therefor. The reference to the chemist's testimony is unnecessarily specific, yet when we read the whole

charge we are impressed with the idea that the court tried to present the case with fairness to the state and to the defendant and that there was no failure in this regard that could prejudice the rights of defendant. Several times in the charge the court impressed the burden of the state to prove guilt beyond a reasonable doubt. Once in connection with this charge he warned that "very often the reasonable doubt is abused * * * because you want to carry that too far." This might better have been omitted, but there followed immediately an instruction full and correct on this subject which could have left no doubt in the minds of the jurors as to what was their duty.

We find no prejudicial error in the case.

Judgment affirmed.

HOLT, J. (dissenting).

I dissent. The majority concede that the questions put to the prospective jurors were proper and ought to have been answered so that defendant could exercise his right of peremptory challenge intelligently. The law assures everyone accused of crime a fair trial. It makes no distinction in this regard between the one against whom the state has conclusive proof and the one against whom it has barely sufficient to submit to a jury. Among other matters which the statute specifically names as rights of the accused in a criminal trial are certain peremptory challenges and the last argument to the jury, the sole arbiter of his guilt or innocence. I conceive these to be rights which an accused cannot be deprived of without also depriving him of a fair trial. He may waive them, but defendant did not do so in this case. The record here does not suggest that defendant's attorney was unduly prolix in the voir dire examination of the jurors. The questions were few and directed to pertinent matters. That courts regard a denial of the examination here sought as reversible error is sustained by abundant authority. This court in Spoonick v. Backus-Brooks Co. 89 Minn. 354, 94 N. W. 1079, says of a litigant's examination as to a juror's qualification: "It is his right first to learn the facts, and he must do so to exercise intelligently his right to challenge peremptorily." Heydman v. Red Wing

Brick Co. 112 Minn. 158, 127 N. W. 561, holds: "In examining jurors, however, an attorney is not limited to questions which would establish bias. He has a right to elicit sufficient information to enable him to determine the advisability of interposing a peremptory challenge." Decisions of other courts and textwriters express the same view: In Comfort v. Mosser, 121 Pa. St. 455, 15 Atl. 612, Justice Paxson says: "A party to a suit has a right to an impartial jury. Hence it has always been customary to allow him to examine a juror on his voir dire as to any matter which may affect his mind or show bias or prejudice. The result of such an investigation may or may not amount to a disqualification of the juror. That is a question which arises only upon a challenge for cause. The party has a right to such examination to enable him to exercise his peremptory challenges intelligently and I have never known it to be denied." In Hale v. State, 72 Miss. 140, 149, 16 South. 387, 389, it is said: "It was his right to make such examination as would enable him to decide if there was ground for exercising his great right to peremptorily challenge. This right, conferred upon him by law, could only be intelligently exercised after a full and fair inquiry of each juror as to the exact state of his mind and feelings, not only as affecting the defendant personally and primarily, but as likely to affect his action as a juror even, and perhaps, unconsciously to himself. The office of peremptory challenge is to protect the defendant against those legally competent, but morally, or otherwise, unfit or unsuitable to try the particular case, and to deny a full and fair examination of a juror, in order to wisely exercise the peremptory challenge, would be practically to nullify the right. For of what avail would a peremptory challenge be if exercised at random or blindly, and without reason?" Lavin v. People, 69 Ill. 303, is a case on all fours with the one at bar. It was a prosecution for illegal sale of liquor. A prospective juror was asked whether he was a member of a temperance society or connected with any society organized for the purpose of prosecuting violators of the temperance laws. Upon objection of the state's attorney the questions were not answered. The court reasoned as in the opinions already quoted and concluded: "The questions were asked with a view to call out

facts upon which to base a peremptory challenge, and for this pur-pose they were proper, and should have been answered. That the refusal of the court to permit the questions asked, to be answered, was error for which the judgment should be reversed, there can be no doubt." See also Thompson, Trials, § 101; Watson v. Whitney, 23 Cal. 376; Donovan v. People, 139 Ill. 412, 415, 28 N. E. 964; State v. Mann, 83 Mo. 589. In thickly settled communities litigants do not know the jurors. Jury lists are not furnished or are not available beforehand, so that interested parties may learn of the individual juror's connections. The practice is not to privately obtain informa-tion of or from those on the jury list to ascertain their qualifications to sit in the different cases that come up for trial during a term of court. That matter of gaining information would now be justly condemned. But information concerning a juror is needed in order to properly exercise the peremptory challenges as well as those for cause, and the proper place to gain the same is in open court. This assures fairness to both litigants. State v. Bresland, 59 Minn. 281, 61 N. W. 450, refutes the contention that no prejudice resulted in this case. It is no answer to say that defendant had a fair and impartial jury. Who knows? He was denied the right to ascertain.

The law gives a litigant the right to have his attorney argue the case to the jury when the evidence is in. Svensson v. Lindgren, 124 Minn. 386, 145 N. W. 116, Ann. Cas. 1915B, 734. In a criminal case the closing argument is by section 9206, G. S. 1913, given the accused. This right is of no avail if it may be met by the court's instructions as was done in the instant case. I shall only make one or two references to the parts excepted to. The testimony was that a large quantity of mash designed for distillation into potable alcohol and some of the liquor found had been taken and at once destroyed by the officers who served the search warrant in this case. Defendant contended that the claimed mash was nothing but slop and hog feed, and the fluid in the bottles destroyed was distilled water. The court's charge indicates that defendant's counsel argued that, since the officers wrongfully destroyed evidence, the jury had the right to draw the inference that had such evidence been available at the trial, it would have been favorable to defendant. But the

court met and refuted this argument by the use of an incorrect statement of the law to the effect that it was the duty of Federal officers to destroy any liquor manufactured in violation of law. I have been referred to no law so authorizing. It may only be done under order of court. The property taken from defendant and destroyed was so destroyed without any judicial order or direction. The court also improperly fortified the testimony of the chemist, and needlessly suggested that there be no abuse by the jury of the reasonable doubt to which defendant was entitled. To my way of thinking the major part of the charge was argumentative. What was said in Johnson v. Walsh, 83 Minn. 74, 85 N. W. 910, and State v. Yates, 99 Minn. 461, 109 N. W. 1070, is clearly applicable to those parts of the charge upon which errors are assigned. The temptation may come strongly to a trial court to refute unfair and specious arguments so often made by a defendant's attorney, since our statute gives the state no right to answer them in a criminal case and nevertheless requires it to prove guilt beyond a reasonable doubt. Opinion may be divided as to the wisdom of this statute. But so long as it remains courts should respect it. Should the attorney of the accused in his closing address base arguments upon incorrect principles of law, the court may and should call the attention of the jury to the inaccuracy and caution them against being misled thereby.

Because defendant was deprived of exercising his statutory right of peremptory challenge to jurors, and because the trial court did not only answer the closing arguments of defendant's attorney, but in part based such answer upon a law which does not exist, I think defendant was deprived of his constitutional right to a fair trial. He is entitled to such a trial even though guilty, since under our law, as it now stands, the court may not direct a verdict against one accused of crime.

The opinion herein states that it is significant that Mrs. Mulroy was not called. But what object was there in calling her, for, when defendant offered to prove that she was under physician's care and on his advice the still was procured to distill water for her use, it was unhesitatingly held improper. The presence of the still was a

damaging circumstance of which the state rightfully made much. The defendant was not permitted to show its presence for an innocent purpose. It is not entirely clear that the samples taken from defendant's place were not mixed with samples from other raided places. The officers were a little confused in their testimony. At least there was a proper jury question, even though' defendant was unduly restricted in his cross-examination of the state's witnesses upon that issue. There was evidence that bichloride of mercury was put in the samples to arrest fermentation. None was detected by the chemist nor was it shown that a sufficient amount to effect the purpose was used. The defendant is a farmer living in the western part of Nobles county for 34 years. He had a family and an invalid wife. He gave his explanation of the presence of the mash and so-called liquor. He says he knew neither the taste nor smell of whiskey. The jurors were not required to believe his testimony, but they could if they chose. He was entitled to have proper evidence which he offered received, and his own testimony weighed, as upon a fair trial. If the issue had been in a civil action a verdict could not have been directed against him.

DIBELL, J. (dissenting.)
I agree with Justice Holt.