JAMES A. LUCAS v. GANLEY BROTHERS, INC. AND ANOTHER.[1]

January 15, 1926.

No. 24,964.

**Evidence sustained finding of contract.**

1. The evidence justified the jury in finding that plaintiff was employed to complete a portion of a county road for the contractor and was to be paid 90 cents an hour for the use of his teams and a certain amount for superintending the work.

**Court construes written contract most favorably to party not preparing it.**

2. The construction of a contract in writing must be determined by the court as a question of law. If the contract is prepared by one of the parties and the language is ambiguous, it should be construed most strongly in favor of the opposite party, and read in that sense in which a prudent and reasonable man would have understood it.

**Contractor and surety liable for construction of "shoulders" beside road.**

3. The contract for the construction of the road obligated the contractor to place "shoulders" on each side of the roadway, and the surety on its bond is liable to plaintiff for the amount due him under an agreement with the contractor which covered "shoulder work."

**Admission of evidence of collateral fact within discretion of trial court.**

4. Evidence of a collateral fact is admissible, if it has a direct tendency to show that the testimony of witnesses on one side of an issue is more reasonable than that on the other side, but its admission is largely within the discretion of the trial court. Under the circumstances there was no error in the exclusion of such evidence.

[1]Reported in 206 N. W. 934.

**Counsel must call court's attention immediately to erroneous statement of fact to jury.**

5. An erroneous statement of fact, made when the instructions to the jury are given, must be called to the attention of the court in order that it may be corrected before the jury retires. An exception taken at the close of the charge was not sufficient to comply with this rule.

**No error in rulings or charge.**

6. There was no prejudicial error in rulings on the admission of evidence or in the instructions to the jury.

**Defendants not deprived of opportunity to challenge jurors.**

7. Under the circumstances the defendants were not deprived of an opportunity to examine prospective jurors in regard to their acquaintance and relations with one of the attorneys for the plaintiff.

**No misconduct of juryman.**

8. A claim of misconduct on the part of one of the jurors, who conversed with one of the attorneys during the progress of the trial, is without foundation.

**Verdict not excessive.**

9. The damages awarded are not excessive.

Appeal and Error, 4 C. J. p. 1004 n. 63.
Building and Construction Contracts, 9 C. J. p. 709 n. 18.
Contracts 13 C. J. p. 545 n. 42; p. 783 n. 77.
Evidence, 22 C. J. pp. 164 n. 75; 167 n. 11; 168 n. 17.
Highways, 29 C. J. pp. 608 n. 2; 613 n. 75, 83, 85, 86.
Juries, 35 C. J. pp. 300 n. 40, 41; 386 n. 22.
New Trial, 29 Cyc. pp. 794 n. 42; 797 n. 60.
Trial, 38 Cyc. p. 1790 n. 20.

Action in the district court for Ramsey county. The case was tried before Bechhoefer, J., and a jury which returned a verdict in favor of plaintiff. Defendants jointly and severally appealed from orders denying their motions for a new trial. Affirmed.

*Cowern & Jesmer,* for appellants.

*Stevens & Stevens,* for respondent.

LEES, C.

The defendant Ganley Brothers, Inc., had a contract with Ramsey county for the construction of about two miles of road between St. Paul and New Brighton, and gave the bond required by G. S. 1923, § 9700, with the defendant Southern Surety Company as surety thereon. The plaintiff, a subcontractor, has a claim for work done in the construction of the road, and brought this action to recover the sum claimed. The jury returned a verdict in plaintiff's favor for $4,430.04, and defendants appealed from an order denying their motion for a new trial.

The contract with the county was made July 16, 1923, and the work of grading was begun shortly thereafter. Plaintiff furnished teams to haul away the material excavated by a steam shovel operated by the contractor and was paid for their use at the rate of 90 cents an hour. Thereafter plaintiff was hired to finish the grading. He was to receive 45 cents a yard, but, if he handled more than 5,292 yards, 40 cents a yard for the excess. He did the work, completing it, according to his own testimony, on September 27. The testimony of J. F. Ganley, partially corroborated by the engineer in charge of the work, was to the effect that part of the grading was unfinished on October 1. However, all the witnesses agree that plaintiff did finish the work, differing only as to the date of completion.

Plaintiff also testified that between September 27 and October 1 he was employed to do all the work necessary to complete the road after the concrete surface was in place, and that he was to receive 90 cents an hour for team hire and in addition 10 per cent of the amount thus earned for superintending the work. In this he is corroborated by several witnesses, but is flatly contradicted by J. F. Ganley, the person alleged to have employed him.

The court submitted this issue to the jury who found in plaintiff's favor. It is urged that the testimony of plaintiff and his witnesses in support of his claim is inherently improbable and did not justify the jury in so finding. It is contended that when the steam shovel was in operation the contractor discovered that plaintiff's

horses were so old and weak that it was unprofitable to pay 90 cents an hour for their use; that this was the reason for changing to a yardage basis when the second contract was made, and that it is unbelievable that the contractor would go back to the old basis when the teams were hired for the third time. We are unable to adopt this view of the evidence.

We think all questions respecting the third contract were for the jury and that a finding of its existence and terms, in accordance with the testimony of plaintiff and his witnesses, is not unwarranted. It follows that the contractor is liable to plaintiff, but not that the surety is liable unless the work done pursuant to the third contract of hiring is work which the contractor was bound to do.

A large portion of this work was placing "shoulders" on both sides of the roadway. Was the contractor bound to place them? The contract contains this language:

"The contractor, for and in consideration of the payment or payments herein specified and by the county to be made, hereby covenants and agrees to furnish all materials (except such as is specified to be furnished by the county), all necessary tools and equipment and to do and perform all the work and labor in the construction of the New Brighton Road * * * as shown on the approved plans and specifications, for the price and compensation set forth and specified in the proposal signed by the contractor * * * and hereto attached and hereby made a part of this agreement, said work to be done and performed in accordance with the plans and specifications therefor on file in the office of the County Auditor of said county, which plans and specifications are hereby made a part of this agreement."

To ascertain the intention of the parties when they entered into the contract, the plans, specifications and profiles and the proposal submitted by the contractor, must be examined, and from them the proper construction of the contract must be determined by the court as a question of law. Hanson v. Eastman, 21 Minn. 509; State v. Fellows, 98 Minn. 179, 187, 107 N. W. 542, 108 N. W. 825.

Since all the documents were prepared by representatives of the county, the language found in them is to be construed most strongly in favor of the contractor, if the contract is ambiguous in fact. Austrian v. Davidson, 21 Minn. 117, 121; Swank v. St. Paul City Ry. Co. 72 Minn. 380, 75 N. W. 594. If there be ambiguity, the ambiguous language must be read in that sense in which a prudent and reasonable man would have understood it, because the contract was proffered by the county and not by the contractor. Symonds v. N. W. M. Ins. Co. 23 Minn. 491, 502.

Shoulders are shown on the plans and profiles. Certain notations thereon contain information and directions relative to their construction. One is to the effect that 20 cubic yards in each station of 100 feet are to be added to fill quantities for shoulder material. The contractor's proposals make no specific mention of shoulders. The proposals called for by the county were four in number, viz: Grading; culverts; guard rail, gutters and miscellaneous structures; paving. The quantity of work in each of these classes was estimated. Bids were received on a unit basis for the work in each class. The excavating and filling necessary to prepare the roadway for surfacing were covered by the proposal for grading. The bid on this work was 40 cents a cubic yard. The proposal for paving contains the words "shoulders-earth." There was no estimate of the quantity of earth required and the space in which the price should have been inserted was left blank. The cost of constructing shoulders is so much greater than that of excavating and filling that it seems unreasonable that a bidder would intend that his bid on excavation work should cover shoulders.

Apparently the contractor thought that it was bound to construct the shoulders, for the jury found that plaintiff was employed to do this work. Be this as it may, the language of the contract leaves little room for doubt that, whatever Mr. Ganley may have thought, by the contract with the county his corporation was obligated to complete the road depicted in the plans and profiles, and this could not be done without including the shoulders. We so construe the contract and hold that both the surety company and the contractor are liable to plaintiff.

Evidence that plaintiff's teams were old and weak was offered on the theory that it tended to show the improbability of the making of the third contract for the payment of their hire on a time basis. It was rejected and error is assigned.

It is well settled that, whenever conflicting testimony respecting a material matter is given by opposing witnesses, evidence of a collateral fact is admissible if it has a direct tendency to show that the testimony of the witnesses on one side of the issue is more reasonable than that on the other side, but such evidence is to be admitted with caution, the trial court having a broad discretion in receiving or excluding it. Dun. Dig. § 3252. The proposed evidence related to the condition of the teams about two months before the third contract is alleged to have been made and was offered by witnesses whose qualifications to judge of horse flesh were not shown. The exclusion of the evidence was not erroneous.

Other assignments of error relative to rulings on evidence have been examined. If any were erroneous, we are satisfied that the error was harmless.

The jury were instructed that the contracts with plaintiff covered three distinct periods of time, and that as to the second "there are some differences between the parties. Lucas claims for 5,292 cubic yards of excavation work at 45 cents per cubic yard, while Ganley admits but 5,000 cubic yards, a difference of $131.40." This was said when the claims of the parties were outlined. After mentioning certain other items in dispute, the court said: "If I have misstated any of these items, I would ask counsel to bring any error to my attention now." No objection was made to the statement concerning the second contract, but it is assigned as error in the motion for a new trial and on this appeal. In this situation we must apply the rule which requires counsel to call the court's attention to an erroneous statement of fact made in the course of the charge. Unless this be done at or before the conclusion of the charge, the right to demand a new trial on that ground is waived. Dun. Dig. § 9798. At the close of the charge the following exception was taken:

"It is rather difficult, of course, listening to the charge—I would like an exception insofar as the charge differs in any respect from the four requests that I made."

The exception is susceptible of more than one meaning. We think it is a fair inference that counsel found it difficult—not to hear the charge, but to point out error in it, and was content to take exception to the modification of the instructions requested.

Fault is found with the charge in other particulars. We think it was a clear and adequate statement of the law applicable to the material issues of fact and that there is no valid reason for adverse criticism.

The name of Herbert P. Keller appears on the summons and complaint as one of plaintiff's attorneys. At one stage of the proceedings Ramsey county was brought in as a party. Thereupon Mr. Keller, who is one of the county commissioners, very properly withdrew from the case. When the jury was impaneled, prospective jurors were not interrogated as to their acquaintance or relations with him. After the action was dismissed as to the county, he came into the case again and participated in the trial as one of the counsel for plaintiff. It is argued that defendants were thus deprived of an opportunity to challenge jurors who might be influenced by their acquaintance with Mr. Keller. There is no showing or intimation that the jury was not in all respects a fair jury. In any case all the parties can demand is an impartial jury composed of jurors possessing the requisite statutory qualifications. State v. Mulroy, 152 Minn. 423, 189 N. W. 441; 35 C. J. p. 300. The action was dismissed as to the county before the jury was drawn. It appears that, the day before the trial, appellants' counsel were informed that a dismissal of the action as to the county was expected, in which event Mr. Keller would take part in the trial. Under these circumstances it cannot be claimed that appellants were ignorant of the fact that Mr. Keller would probably participate in the trial. Searle v. Bishop, 203 Mass. 493, 89 N. E. 809, 25 L. R. A. (N. S.) 992, 17 Ann. Cas. 340, and other cases of the same tenor, are not in point.

There is a claim of misconduct on the part of one of the jurors who conversed with Mr. Keller while the case was on trial. It is met by affidavits of the juror and the attorney containing a full and satisfactory explanation of the circumstances and nature of the conversation. Under the rule announced in Nelson v. Kuhfeld, 158 Minn. 163, 197 N. W. 253, it must be held that the charge of misconduct is without foundation.

It is urged that the damages awarded are excessive because plaintiff did part of the work of excavation after October 1 and charged 90 cents an hour therefor instead of 45 cents a cubic yard. As already noted, there was a dispute as to the date of final performance of the second contract and the beginning of performance of the third, and the evidence was of such a nature that the jury might find that the second contract had been performed prior to October 1. If it was and the work done after that date was to be paid for on a time basis, the damages awarded are not excessive.

The other assignments of error do not require discussion.

The order appealed from is affirmed.