JOHN SPOONICK v. BACKUS-BROOKS COMPANY.[1]

May 22, 1903.

Nos. 13,470—(110).

**Assumption of Risk.**

*Held*, in a personal injury action, that the question of plaintiff's assumption of risk was for the jury under all the circumstances disclosed at the trial.

**Insurance—Examination of Jurors.**

Where a defendant in such an action is indemnified by an accident insurance company, it is not error for the court to permit plaintiff's counsel to show the fact when impaneling the jury, and to inquire of each juror upon his voir dire if he is a stockholder, or in any manner interested, in such company. Such inquiries are proper and necessary in order to determine whether the jury can act impartially, and without prejudice to the substantial rights of a party to the litigation.

**Evidence.**

Certain alleged errors in the admission and exclusion of testimony considered and disposed of.

Action in the district court for Hennepin county to recover $10,000 for personal injuries. The case was tried before Simpson, J., and a jury, which rendered a verdict in favor of plaintiff for $3,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Henry C. Belden* and *Trafford N. Jayne*, for appellant.

*John W. Arctander*, for respondent.

COLLINS, J.

The plaintiff in this action—one to recover damages for personal injuries—had a verdict. The appeal is from an order denying the alternative motion for judgment notwithstanding the verdict or for a new trial.

A brief statement of the facts seems essential. Plaintiff was eighteen years of age, of ordinary intelligence, and had worked in

[1] Reported in 94 N. W. 1079.

the sawmill of defendant, a corporation, some months, and in various parts thereof; part of the time on the day shift and part of the time at night. At the time of the accident, which was about midnight, he was at work at a bench used for conveying lumber, by means of rollers placed at intervals along the same, from the saws to another part of the mill. This required that he do some sorting as the sawed material came along over the rollers. Near where the plaintiff stood when sorting the lumber, using a "pickaroon," which he held in his right hand, there was a gate or bumper, which moved up through an aperture in the bench, and was operated by means of a trip lever, on the treadle of which he placed his foot, pushed down, and, when this treadle reached the lowest point, sprung the arm under a catch by means of a slight motion of the foot to the left. The gate was then held in position above the bench, and caught and stopped all material as it came along. To lower the gate and permit the material to pass on to the left, the operator put his foot upon the treadle, pushed it down with a slight movement to the right to liberate it from the catch, released his foot, and thereupon the gate dropped below the bench of its own weight, and then did not interfere with the passage of lumber until again raised.

The catch, which was near the floor, appears to have been out of order for some time prior to the accident, and, instead of using it, the plaintiff and other operators substituted a strip of wood about two-and-a-half feet long, notched at each end. The notch at the lower end of this strip or stick was placed over the lever just where the treadle was attached to the arm, and that at the other end was slipped by the operator under a cast iron, which was fastened to the bench. When the strip was thus placed, the treadle was kept down and the gate up. The platform or top surface of the bench projected a short distance over its frame, and was finished on its front edge with a four-inch board. Each roller was operated by means of gearing set in the bench a few inches from its edge, the gearing being covered over so that it did not show in the top or upper surface; in other words, it was not visible except from underneath. The cogwheels of the gearing meshed at right angles close to the under surface of the platform,

so that they could not be seen except by stooping and looking underneath; and under this bench no part of the gearing was covered or guarded. When the stick which served to keep the lever down was not in use, it was thrown upon the floor back of the operator, so that whenever he wanted it he turned partly or wholly around, as necessity might require, picked it up with his left hand, placed it in position, and there it necessarily remained as long as the gate was above the bench. The defendant admitted at the trial that the use of this stick resulted from the defective catch, and was with its implied consent.

On the night in question plaintiff had occasion to raise the gate. He turned around, seized the stick with his left hand, having the pickaroon in his right, and attempted to place it in position while holding the lever down with his foot. The stick slipped from his grasp, and in attempting to seize it as it fell under the bench his hand and arm were caught and badly injured in the cogwheels, and for these injuries this action was brought.

1. There was presented to the jury in this case the frequently recurring defense of assumption of risk, the plaintiff claiming that he did not know, while he was at work, that the gearing underneath the bench was not guarded and protected, as required by the provisions of G. S. 1894, § 2248. He testified positively that he did not know that this gearing was unguarded. This question being specifically submitted to the jury, they found that the plaintiff did not know, before the time of the injury, that the portion of the gearing extending below the platform was uncovered.

The rule in respect to the assumption of risk is well settled by the decisions of this court. If there was testimony in the case tending to support the verdict of the jury to the effect that plaintiff did not know that the gearing was uncovered and unguarded, the order must be affirmed, unless it appears that, in the exercise of ordinary care and prudence, he ought to have known that the statute had been disregarded, and that these cogwheels were exposed, whereby he was in danger of injury if he came in contact with them. The law required of him the use of his senses in an ordinary and prudent manner, but did not demand extraordinary perception or vigilance. As before stated,

the wheels were underneath and back from the front edge of the bench a few inches. They were about three feet from the floor. Counsel for defendant contends that it is impossible to believe that the plaintiff did not see the cogwheels while at work about the mill, and especially while at this particular place, because, if he had looked underneath the bench, either in front of him, where they were, or to his right or left, where like wheels were in motion, he could not have avoided seeing that no part thereof was guarded or covered, but, on the contrary, that all was exposed. One of the photographs produced in evidence, taken with the camera placed six feet from the gearing and a trifle over two feet from the floor, shows the cogwheels plainly, and it must be admitted that, if plaintiff had put himself in the same position, he could not have avoided seeing the machinery. Another photograph, taken with the camera placed five feet back and at the same distance from the floor as was the plaintiff's chin when he stood upright and at work, does not show any part of this gearing. So it may be assumed that if plaintiff stood upright, and did not look under the bench, the condition of the gearing would not be observed. It would be seen only when he stooped and looked towards it, casually or otherwise.

The case is very close on this question of assumption of risk. But, having examined and analyzed the testimony with great care, and, taking into consideration the age of the plaintiff, that he was compelled to be very active in caring for the lumber as it came over the platform, that his time and attention were wholly taken up with the performance of his duties while at work, that from the photographs it appears he could see the gearing only when in a stooping posture, that the jury found specifically that he did not know that it was uncovered, that the learned trial court, who saw the witnesses and observed their demeanor upon the stand, was of the opinion that the verdict was justified, and denied the motion, we are constrained to say that we cannot hold, as a matter of law, that plaintiff either knew, or ought to have known, the conditions, and therefore that he assumed the risk of his employment. It follows that, in our judgment, there was sufficient testimony to sustain the special as well as the general verdict of

the jury. It is not a case where physical conditions and matters of common knowledge so unerringly and certainly point to the existence of a certain fact as to leave no room for a contrary opinion. It does not come within the rule laid down in Voge v. Penney, 74 Minn. 525, 77 N. W. 422.

2. It is contended that evidence was introduced and questions allowed when impaneling the jury, which were immaterial and prejudicial, and for which a new trial should be granted. While the jurors were being selected, counsel for the plaintiff asked each one upon his voir dire whether he was connected in any manner with a certain accident insurance company, objection being made thereto by defendant's counsel. During the discussion one of defendant's counsel was called, and, after being sworn, interrogated concerning the claim made by plaintiff's counsel that the company in question had issued to this defendant a policy of insurance and indemnity in case of accident happening in its mill, and was the real defendant. That this company had issued such a policy was then admitted, and thereafter plaintiff's counsel inquired of each juror as he was called whether he was a stockholder or had any interest in such company. The question squarely raised by the record is whether, upon the preliminary examination of a juror, the fact that the defendant is indemnified by an accident insurance company may be disclosed, directly or indirectly, and the juror interrogated as to his connection with or interest in such company, in order that the court may determine whether he can act as a juror impartially, and without prejudice to the substantial rights of one of the parties.

That either litigant has the right to challenge for implied bias must, of course, be admitted, and we think it would be impossible to say, or for the court to hold in the exercise of its proper discretion, that any person connected with the indemnifying company as a stockholder or otherwise could be a proper person to sit as a juror in a case the result of which might be of pecuniary interest to such company. If the proposed juror was a stockholder or otherwise interested in such a company, his disqualification would seem to follow as a matter of law. If this be so, it is difficult to see upon what ground the court could refuse to permit counsel to

ascertain the facts while impaneling the jury. It is no answer to this to say that the insurance company is not named as a party to the action, for the bias of the juror is not to be determined by this fact. Nor is it an answer to say that counsel may protect his client by using a peremptory challenge. It is his right first to learn the facts, and he must do so to exercise intelligently his right to challenge peremptorily. The authorities all go to show that a very insignificant interest in the result of an action, and frequently a very trifling relationship to one of the parties, is sufficient to disqualify a person from sitting as a juror. In order to secure to litigants unbiased and unprejudiced jurors, we are compelled to hold that plaintiff's counsel had a right to ascertain whether there was such a relationship between the persons called as jurors and the insurance company, a corporation vitally interested in the result, which would disqualify these persons, because, by implication, they would be biased and prejudiced.

Of course, these views are expressed in a case where there is nothing to indicate that there was a lack of good faith on the part of counsel, when bringing to the attention of the court, for the purpose of properly selecting the jury, the fact that another party, not named as defendant, was specially interested in the result of the case. Counsel contends, among other things, as a reason why such questions should not be permitted and the real facts shown, that, if it is brought to the knowledge of the jurors that an insurance company is indemnifying the defendant named, a verdict against the latter will be much more easily found. Possibly there is ground for this assertion, but we must assume, as a general rule, that jurors will treat all litigants fairly and impartially, will be guided by the testimony, and that they will not be influenced by any other consideration than that of justice and fair treatment to all. Their oath requires this, and the presumption must be that their solemn obligations are not disregarded.

3. We have considered the contention of counsel that it was error to allow the plaintiff to testify that when the jurors were visiting the mill on the first day of the trial the catch which held the lever down was not in the same condition as at the time of the accident. There are two sufficient answers to this contention. In

the first place, the plaintiff had already testified to this fact without objection; and, secondly, it is immaterial that this was shown by answer to a direct question. The jurors understood perfectly well before the testimony was received that the catch was defective, and not in working order, when plaintiff was injured, and that a stick was used to hold the lever down and the gate up, by him and by other workmen, for some time previous. It is obvious also that the jury knew that a new catch had been put on after the accident, and that the lever was being operated in an entirely different manner when the accident happened.

4. Another claim is made that the court erred in not admitting the testimony of Tucker, who worked at this same place during the day time. He was asked if he had an opportunity to see the gearing down underneath the roller bench. The court below remarked, when ruling upon an objection to the introduction of this testimony, that it would be proper to describe the situation, and to let the jury determine from that description what the witness could see, or at least what opportunity there was for him to see the gearing. This view was correct, and the objection was properly sustained. It was for the jurors to determine what opportunities there were for seeing, or what ought to have been seen, from a description of the bench, the rollers, and the gearing as they were when the plaintiff was injured, aided, as they undoubtedly were, by their visit to the mill itself.

Order affirmed.