MILLIE OLSON *v.* AMELIA M. MUSSELMAN.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 6—decided October 9, 1940.

*Edward L. Reynolds,* for the appellant (plaintiff).

*David M. Reilly,* for the appellee (defendant).

MALTBIE, C. J. This case arose from a collision between two automobiles near the intersection of State Street and Dixwell Avenue, in the city of New Haven, at about four o'clock in the afternoon of April 8, 1938. The plaintiff was riding as a passenger in an automobile operated by Emma Olson which had been proceeding in an easterly direction on Dixwell Avenue and had turned north on State Street at the intersection of the two streets. The automobile of the defendant was proceeding southerly on State Street and the two vehicles came into collision at a point upon State Street a short distance north of the center of the intersection. The case was tried to the jury and a verdict returned in favor of the defendant. The plaintiff has appealed, the only errors claimed being in the charge of the court to the jury. Many of the facts as to the locality are not seriously in dispute. The plaintiff claimed to have proved these facts: Dixwell Avenue runs in the general direction of east and west and State

Street runs in the general direction of north and south. For a distance of about three hundred feet north and one hundred and twenty feet south of Dixwell Avenue, State Street is straight. It is paved with concrete of a width of twenty feet divided into two panels of ten feet each with a tar shoulder on its westerly side five and one-half feet wide. On the south side of Dixwell Avenue about sixty-four feet west of the west edge of the concrete pavement on State Street and about forty-five feet west of the straight portions of the west line of State Street as extended across Dixwell Avenue, there is a stop sign facing traffic proceeding east toward State Street. From this point, the south side of Dixwell Avenue extends in a broad curve into the west line of State Street. On the north line of Dixwell Avenue, as it extends to meet the west line of State Street, there is a similar curve commencing at a point about forty-three feet west of the west edge of the concrete pavement on State Street. Upon the property at the northwest corner was located a house and some trees and shrubs which, the plaintiff claimed to have proved, practically cut off the view as regards a car approaching the intersection from the north on State Street on its own right side of the highway.

It was the claim of the plaintiff at the trial that the automobile in which she was riding as a passenger and which was driven by Emma Olson was proceeding east on Dixwell Avenue at a moderate speed; and when it reached the stop sign it came to a full stop. The operator then proceeded slowly directly ahead and south of the center line of Dixwell Avenue, rounded the intersection and turned north on the east panel of State Street; and the defendant's car, moving south on State Street at high speed and without warning, turned to its left onto the east panel, colliding head-on with the car in which the plaintiff was riding at a point

about thirty feet north of the intersection. About three hundred feet north of the north line of Dixwell Avenue as extended before it curves across State Street, there is a sign which warns traffic proceeding south on State Street of the presence of an intersecting highway ahead, which the defendant claimed was "dingy." This sign, as well as the stop sign on Dixwell Avenue, was placed at its respective location by proper public authority. The defendant claimed that her automobile was proceeding south on State Street and when it reached the intersection sign its speed was reduced; that the operator of the defendant's automobile first saw the Olson car moving on Dixwell Avenue at a point about thirty feet west of the west edge of the concrete pavement on State Street; that the speed of the defendant's car was reduced and its horn sounded. The operator then looked to the south for traffic approaching from that direction, and when the plaintiff's car was next seen it was on the west shoulder of State Street and close to the line of the highway. The defendant claimed that the operator of her car, to avoid a collision, turned to the left and the vehicles collided in the center of State Street at a point about thirty-five feet north of the north line of Dixwell Avenue extended.

In its instructions to the jury, the trial court read to them General Statutes, § 1639 (b), which provides that "Any person operating any motor vehicle upon approaching an intersecting highway, a curve or a corner of a highway or a schoolhouse, provided signs on the highway, legible for a distance of one hundred feet, indicate such intersecting highway, curve, corner or school house, shall reduce the speed of such vehicle and give timely signal when reasonable care shall require such action"; and informed the jury that under this statute the defendant was not under the obligation

of sounding a warning on the approach of her car to Dixwell Avenue from the mere fact that there was a sign on the highway indicating the presence of an intersecting street ahead of her; that her duty to do so depended upon the co-existence of two conditions. The first was that "such sign as she approached it was legible to a person of normal eyesight, maintaining such a lookout as would a reasonably prudent person in the exercise of reasonable care, at a distance of one hundred feet north of the place where the sign was located." The second was that reasonable care required the timely sounding of such warning. The court further stated that the burden of proving the first condition was upon the plaintiff and that it did not recall any evidence upon that point; and further instructed the jury: "Since the plaintiff has failed to establish that the sign in question was legible to a person approaching it from the north when a vehicle driven by such person was not less than one hundred feet from it, according to the standard which has been given you the statute which I have read to you, has no application to any fact which you may find from the evidence, and the defendant was not guilty of negligence in so far as a violation of that statute is concerned if you find that she failed to reduce the speed of her car and sound a timely warning as she approached Dixwell Avenue." This instruction was correct. Public officers acting officially are presumed to have done their duty until the contrary appears. *Hellman* v. *Karp,* 93 Conn. 317, 323, 105 Atl. 678. In order to give rise to such a presumption, it is necessary that there shall be a duty upon the public officer to act in a certain way. In *Guhring* v. *Gumpper,* 117 Conn. 548, 552, 169 Atl. 189, we applied this presumption as to the location of a stop sign indicating a through way under § 76c of the 1935 Cumulative Sup-

plement to the General Statutes, quoted in the foot-
note, but under that statute, if a through way is to be
established, a duty is placed upon the traffic authorities
to erect a sign at a certain place. In the case before
us the statute places no duty upon the traffic authority
to erect a sign of any particular type or legible for any
particular distance, but only provides that if there is a
sign legible for a distance of one hundred feet the
duties upon the operator of an automobile arise. The
trial court was correct in charging that under this
statute the plaintiff had the burden of proving that
the sign indicating the intersecting way was legible for
a distance of one hundred feet.

In the course of instructions to the jury the trial
court read provision (c) of § 76c of the General
Statutes, Cum. Sup. 1935, quoted in the footnote,[1] and

[1] Sec. 76c. THROUGH WAYS. (a) The state traffic commission may
designate any trunk line highway or bridge or part thereof as a
through way, and may, after notice, revoke any such designation.
The traffic authority of any city, town or borough may designate
any highway or part thereof under the control of such city, town
or borough as a through way, and may, after notice, revoke any such
designation. (b) No designation of a through way shall become
effective as to regulation of traffic at any intersection thereon until
said state traffic commission or such other traffic authority shall have
caused signs to be erected at such intersections. Each such sign shall
bear the word "Stop" which shall be self-illuminated at night or so
placed as to be illuminated by street lights or by headlights of
approaching motor vehicles, and each such sign shall be located as
near as practicable to the traveled portion of the highway at the
entrance to which the stop is to be made, or at the nearest line of
the crosswalk thereat, and shall be clearly visible for a distance of
one hundred feet along the street intersecting the through way. (c)
Each person operating any vehicle upon any street intersecting any
officially designated through way shall bring such vehicle to a full
stop at the place where such street meets the prolongation of the
nearest property line of such through way or at a clearly marked
stop line, subject to the direction of any traffic control sign or signal
of any officer in uniform at such intersection. The. operator of any
vehicle who has brought such vehicle to a full stop in accordance
with the provisions of this section, upon entering the through way,

instructed the jury that the point at which the Olson car should have come to a stop was not at the sign as the driver testified that she did but at a place which is on or just west of the nearest property line on State Street, and that they might take as the prolongation of the nearest property line the westerly edge of the shoulder of the road on State Street, determined by laying a ruler on the map in evidence between the westerly edge of the street on both sides of its intersection with Dixwell Avenue; and further charged that if they found that the driver of the car in which the plaintiff was riding stopped at the stop sign and not again before entering the street, she was guilty of negligence. In *Goldstein* v. *Kaplan*, 116 Conn. 597, 165 Atl. 794, it appeared that the sign indicating a through way was placed twelve and one-half feet from the prolongation of the nearest property line upon it; the court charged the jury that it was the plaintiff's duty to stop at the stop sign, and we held that this was not error. We said that even if the sign was placed a few feet from the exact location of the property line a stop at it would fully accomplish the purpose of the statute "save in the exceptional case when the sign is obviously not at or near the property line," and that the statute does not require the operator of a vehicle to determine with the utmost exactitude the location of the property line and stop his car with some portion of it precisely at that point, but, reasonably construed, it requires that he stop before passing beyond the property line and into the intersection. In *Guhring* v. *Gumpper*, supra, the situation was that the stop sign was located twenty-nine feet from the property line, and the jury could reasonably have found that the

as well as operators of vehicles upon such through way, shall be subject to the provisions of the statutes relating to the right of way at intersections.

plaintiff brought his car to a stop at the sign; the trial court charged the jury that the fact that the plaintiff did not stop at the prolongation of the property line would not affect his right to recover if the jury found that he did stop at the sign; we sustained that charge upon the ground that we must assume that the legislature intended the statute to be capable of a sensible application, that at many street intersections the property line is not marked in such a way that the driver of a motor vehicle could tell where it is located, and that the only way to give practical effect to the statute was to interpret it so as to require a stop at the sign "save in the exceptional case when the sign is obviously not at or near the property line."

In the case before us, not only was the sign located sixty-four feet away from the edge of the concrete pavement on State Street and forty-five feet away from the straight portions of the west line of State Street extended across Dixwell Avenue, but it was some twenty-five feet away from a line which might be drawn across the front of two buildings located one on each side of Dixwell Avenue facing State Street. It thus appears that this is a case where the sign was obviously not at or near the property line and falls within the exception stated in the *Goldstein* and *Guhring* cases. But that aside, in both of these cases we were applying the statute as it stood before it was amended in 1935 into its present form. General Statutes, § 396. It previously provided that the "stop" sign should be placed "at or near the property line" on the through street, but, subject to the direction of any traffic control sign or signal or any officer in uniform, it required the operator to stop, as is provided in the amended statute, where the street on which he is driving "meets the prolongation of the nearest property line" of the through street. Under the former statute, it could well

be said, as we did in the *Goldstein* case (p. 600), that reliance might be placed upon the location of the "stop" sign as being at or near the property line. Under the statute as it now stands, the requirement that the "stop" sign, where it is not located at the nearest line of the crosswalk, be placed "as near as practicable to the traveled portion of the highway at the entrance to which the stop is to be made," permits it to be located without regard to the position of the property line; and the elements to be considered in entering into the determination of where it is "practicable" to place it include a proper regard to the giving of reasonable notice of the intersection to drivers approaching it. Thus, as it was in the case before us, the sign may be placed a considerable distance away from the traveled portion of the through street, and a stop at the sign would clearly not meet the requirement of the statute that the operator stop "at the place where such street meets the prolongation of the nearest property line" of the through street. Moreover, if the claims of proof of the plaintiff were found true by the jury, a stop at the sign would not serve the purpose of the statute because the driver of a car on Dixwell Avenue would have practically no vision which would enable him to determine whether a car on State Street was approaching from the north. Stopping at the sign would neither comply with the statute nor serve the purpose intended.

The trial court was correct in charging the jury that the action of the driver of the car in which the plaintiff was riding, in stopping at the stop sign did not comply with the requirements of the statute. Nothing in the record indicates that the point which the court stated the jury might take as the prolongation of the nearest property line did in fact represent that prolongation, and from the exhibit in evidence it is difficult to see

how it is possible that it could do so. The trial court erred, therefore, in instructing the jury that it was the duty of the plaintiff's driver to stop at the line it designated. If the property line on State Street was so indicated by physical facts as to be within the reasonable observation of the plaintiff's driver as she approached the intersection, compliance with the statute would require that she stop substantially at that prolongation. The exhibits indicate that there was no property line which would be reasonably observable by her. If that was so, as it is in many instances of the intersection of through ways, the statute as applied to the situation before the court would set up a standard by which to judge the driver's conduct impossible of application. Under such circumstances at least, the statute cannot be held to impose any obligation upon the driver to stop, but must be held to be inoperative. *Cook* v. *State*, 26 Ind. App. 278, 282, 59 N. E. 489; *State* v. *Partlow*, 91 N. C. 550, 553; *Hilburn* v. *St. Paul, M. & M. Ry. Co.*, 23 Mont. 229, 241, 58 Pac. 551. In such a situation, in the absence of a stop line, traffic control signs or officer directing traffic, the duty of the driver to stop would be measured by the usual standards of reasonable care, taking into consideration the fact that she had been warned by the sign that she was approaching a way which had been designated by the authorities as a through way.

The trial court was in error with reference to the application of the statute concerning stopping at through ways, and as a new trial must be had it is unnecessary to consider the other assignments of error.

There is error and a new trial is ordered.

In this opinion BROWN, JENNINGS and ELLS, J., concurred; AVERY, J., concurred in the result.