## KNUTE MICKELSON v. HOWARD C. H. KERNKAMP AND ANOTHER.[1]

March 31, 1950.

No. 34,958.

[1]Reported in 42 N. W. (2d) 18.

*Doherty, Rumble, Butler & Mitchell,* for appellants.
*Clifford W. Gardner* and *David J. Erickson,* for respondent.

MAGNEY, JUSTICE.

Plaintiff recovered a verdict in a personal injury action. Defendants appeal from an order denying their alternative motion for judgment or a new trial.

Franklin avenue in St. Paul, the street on which the accident happened, runs east and west. It is a fairly heavily traveled street. The nearest cross street east of the place of the accident is Berry street. East of Berry is Curfew street, which is 350 feet from the west line of Berry street. From Curfew to Berry there is a downgrade varying from two to three percent. West from Berry it is level. At the west line of Berry the pavement narrows to 36 feet. Crossing Franklin avenue immediately west of Berry and within a very few feet of it are three switch tracks of the Minnesota Transfer Railway Company. They serve the lumberyard and the large warehouse of the Weyerhaeuser Lumber Company. Franklin avenue is 66 feet wide. West of Berry it is paved to its full width.

On the day in question, April 10, 1946, a crew of the railway company was replacing the west rail of the most westerly of the three switch tracks. At the time of the accident the men were working in the center of the avenue. For their protection and as a warning to car operators, a barricade had been put up between the rails of the track upon which they were working and across the pavement. It was composed of two sections of sawhorse construction, each about 16 feet long and placed end to end. At the outer end of each

section was placed a red flag. About 125 feet east of the track upon which the men were working, a red flag had been placed a little off center toward the north. Beyond each end of the barricade was a space or lane extending to the edge of the pavement, over which traffic was moving. The driving space was 12 to 14 feet wide. The north-side lane carried westbound traffic and the south lane carried eastbound traffic. Between the two rails of each track was a fill of other rails, used instead of the usual planks. In order to replace a rail, the fill rail nearest to it had to be removed. After the new rail had been installed and before it had been fully spiked down, a timber was placed in the space which the fill rail had occupied. This timber was about four or five inches in thickness, six inches wide, and about 12 to 14 feet long. When in place next to the rail of the track, the surface was about level with the other fill rails. At the time of the accident, the men had almost finished replacing a rail in the center of the avenues.

Sometime before one o'clock on April 10, 1946, three men were working directly west of the barricade, Nicholas Wagner, the foreman, Joseph E. Swanson, and plaintiff, the latter two being laborers. Plaintiff was lifting a timber such as described above out of the space where it had been used as a fill. It extended out into the ·north driving lane about six feet. It was being removed so that spiking of the rail next to it could be completed. Plaintiff was working eight or nine feet in from the end of the barricade. When he had lifted the timber up to just below his knee, the part of the timber which extended out into the driving lane was struck by the wheel of an automobile, the timber in turn striking plaintiff's leg, causing a severe injury. Plaintiff claims that the automobile which struck the timber was operated by defendant Edna Marie Kernkamp and that it was operated negligently. Said defendant and her husband, codefendant Howard C. H. Kernkamp, were the joint owners of the automobile driven by Mrs. Kernkamp. For convenience, we shall refer to Mrs. Kernkamp as defendant.

Defendant was driving her car west on Franklin avenue. She had three women passengers. Her testimony was that she stopped

her car directly back of a truck near Curfew street, and that she then followed the truck, about 10 feet from its rear, at a rate of 10 to 15 miles an hour, until she had crossed over the tracks. She said that she did not remember seeing the red flag in the street east of the tracks, nor did she see the barricade until she was going by it. She did not remember what kind of a barricade it was. She had a faint recollection of seeing men working to her left about a truck length away. She did not see the timber over which she drove. As she proceeded across the tracks, she said there was "quite a bump," that she "experienced very bumpy tracks, a very bumpy road." She worried about the old tires with which her car was equipped. Because of the bump, she stopped her car about 150 feet or less from the tracks, opened her car door slightly, and listened for escaping air from her tires. Hearing none, she closed the door and proceeded. When about to turn back again into the traffic, one of her passengers called her attention to an oncoming car from the east traveling 30 miles an hour or more. It is her contention that this passing car struck the timber and did the damage, and that she knew nothing of the happening of an accident until the following day.

Swanson, a fellow workman of plaintiff, said he saw the Kernkamp car when it was by the red flag, and that he continued to watch it. It was traveling at 30 miles per hour. When it stopped, he took its license number and wrote it down on the barricade. The car came very close to the barricade and struck the timber four or five feet from its north end. The timber was thrown to one side and struck plaintiff's leg. Swanson testified that after he first saw defendants' car at the flag plaintiff bent down to lift up the timber, and that he had picked it up when the car was coming down toward it, "just about ready to pass over."

■ On the above testimony, probably unnecessarily detailed, defendants contend that the evidence establishes conclusively or so overwhelmingly that there was no negligence on the part of defendant, and that the court erred in not directing a verdict for defendants. In our opinion, defendant's own testimony is more than

sufficient to support the charge of negligence against her. She said that she had no recollection of seeing the red flag near the center of the street, which had been placed there as a warning to automobile drivers that they were entering a zone of danger. It was what might be termed a danger flag. It warned automobile drivers that there was danger ahead, and that they would be required to use reasonable care of lookout under the circumstances. Neither did she see the barricade until she was going by it. She did not see the men working beyond the barricade, only a few feet from her lane of travel, until about a truck length away from them. There was no barrier between them and defendant's lane of travel. She did not see the timber over which the wheels of her car passed. This is all from her own testimony, and clearly it indicates inattention to her surroundings. The jury could readily find that she was negligent.

She intimates that following a truck so closely prevented her from seeing things along and in the street. The presence of a truck is denied by plaintiff. She also claims that, even if her car was the one which struck the timber in question, testimony to the effect that the timber was raised about the time she approached it absolves her from negligence. Under all the facts, we are of the opinion that this court cannot say that defendant was free of negligence as a matter of law.

Defendants also contend that the evidence establishes conclusively that plaintiff was guilty of contributory negligence, and that such negligence was a proximate cause of the accident. About 50 cars an hour passed over the tracks each way. Swanson, plaintiff's main witness, was standing about four feet to the right of plaintiff. It was his duty to look after the barricade and the flags. Whether it was his duty to look after traffic so that no laborer was injured is left in uncertainty. He testified both ways on this. Plaintiff testified that before he took hold of the timber to pick it up he looked up the street to the east, but saw nothing. He then turned around, put his back partly to the traffic, and bent down to raise up the timber. He got a glimpse of the car when it was close to him. The

above is practically all the evidence bearing on the question of his claimed contributory negligence, aside from the surrounding circumstances. Although the question is a close one, it is our opinion that we cannot say that plaintiff was guilty of contributory negligence as a matter of law.

■ Having thus adversely disposed of defendants' contention that they were entitled to judgment notwithstanding the verdict, we must consider the numerous alleged errors on the part of the trial court which defendants contend entitle them to a new trial.

The court refused to permit counsel for defendants to inquire of the jurors on the *voir dire* examination respecting their interest, if any, in the Minnesota Transfer Railway Company, the employer of plaintiff. Since this company was such employer and plaintiff was injured while on duty as its employe, it is evident that it might be interested in the outcome of the action. The inquiry should have been permitted. In Spoonick v. Backus-Brooks Co. 89 Minn. 354, 359, 94 N. W. 1079, 1081, we said:

"* * * The authorities all go to show that a very insignificant interest in the result of an action, and frequently a very trifling relationship to one of the parties, is sufficient to disqualify a person from sitting as a juror."

However, there is no showing here that any juror who served on this case had any interest or connection with the transfer company. No prejudice has been pointed out. Nothing appearing to the contrary, it is presumed that the jury was impartial, and the alleged error immaterial. State v. Hurst, 153 Minn. 525, 193 N. W. 680; State v. Kluseman, 53 Minn. 541, 55 N. W. 741; State v. Smith, 56 Minn. 78, 57 N. W. 325; Perry v. Minneapolis St. Ry. Co. 69 Minn. 165, 72 N. W. 55; 1 Thompson, Trials (2 ed.) § 120.

In Lucas v. Ganley Bros. Inc. 166 Minn. 7, 13, 206 N. W. 934, 937, we said:

"* * * There is no showing or intimation that the jury was not in all respects a fair jury. In any case all the parties can demand

is an impartial jury composed of jurors possessing the requisite statutory qualifications."

■ Defendants urge the granting of a new trial on the ground that the court erred in several respects in its instructions to the jury. It first challenges the following instruction:

"It is also the law that the driver of a car, if the exercise of ordinary care requires it, shall drive at a speed appropriately reduced when special hazards exist by reason of highway conditions or when a car is approaching and crossing a railway crossing. So here, it was the duty of Mrs. Kernkamp to drive her car as she approached and crossed the railroad crossing at a place where men were working in the street at a speed appropriately reduced from what it might have been in the absence of these conditions. The violation of this duty, if there was any violation, would be evidence of negligence."

It is apparent that the court had M. S. A. 169.14, subd. 3, in mind in giving the above instruction. Subd. 3 reads in part:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, * * * and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Defendants objected to the giving of the above instruction "upon the ground that it does not appear that this was a railroad crossing." Although the tracks here involved were switch tracks, the street over these tracks must be considered a "railway crossing." It is difficult to designate the layout of street and tracks in any other manner. The statute makes no distinction between main-line and switch tracks. The court, moreover, did not confine the requirement of reduced speed to the crossing, but said that it was defendant's duty to drive her car as she approached and crossed the railroad crossing at a place where men were working in the street at a speed appropriately reduced from what it might have

been in the absence of these conditions. Under the fact situation here, it is our opinion that the court did not err in giving this instruction. In view of the presence of the red flags, the barricade, and the men working on the street, defendants were not entitled to a more favorable instruction than the one given.

■ Defendants also assign as error the court's instruction that if defendant followed the other traffic more closely than a prudent person would have done there would be evidence of negligence, which the jury might find to have been the cause of the accident. The complaint did not charge defendants with such negligence. Neither did plaintiff offer any evidence along that line. In fact, the testimony in behalf of plaintiff was that there was no car or truck proceeding directly ahead of defendants' car. Whatever evidence there is in the record was produced by defendants. Defendant, driving in a zone of danger, by following so close to a large truck that her vision was materially obstructed, made it a proper question for the jury to determine whether such conduct was negligent or not.

■ No objection to the submission of this issue to the jury was made by defendants at the close of the charge. The court's attention was not directed to the claimed error. In Foster v. Bock, 229 Minn. 428, 432, 39 N. W. (2d) 862, 865, we said:

"* * * Although a formal exception need not be taken to an inadvertent omission or error in a trial court's instruction to the jury, such omission or error is no ground for granting a new trial unless the trial court's attention has been seasonably directed thereto in some manner."

To the same effect, see, Storey v. Weinberg, 226 Minn. 48, 51-52, 31 N. W. (2d) 912, 915. See, also, Dehen v. Berning, 198 Minn. 522, 528, 270 N. W. 602, 605; State v. VanGuilder, 199 Minn. 214, 216, 271 N. W. 473, 475; Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; Vanderbilt, Minimum Standards of Judicial Administration, pp. 321, 332, 562.

■ Defendants further urge that the court erred in submitting to the jury the question whether defendant kept a proper lookout. We have detailed and discussed the evidence on this point. It is clear that there was abundant evidence to warrant the court in submitting this issue. Furthermore, no objection to its submission was made at the close of the charge.

■ The court submitted to the jury the issue of excessive speed. Defendants claim it erred in so doing. The maximum speed testified to by witnesses for plaintiff was 30 miles an hour. In view of a situation where a barricade had been placed across the street requiring drivers to turn aside; where a red flag had been set up to warn drivers that they were about to enter a zone of danger; and where men were working in the street, it was proper to submit to the jury the issue of whether under the circumstances defendant was operating her car at a speed greater than was reasonable and proper under the circumstances. The court's attention was not directed to this claimed error at the close of the charge.

■ Defendants further contend that the court erred in submitting to the jury the issue of the failure of defendant to have her car under proper control. The evidence in behalf of plaintiff, which of course is the version which we must accept in all instances where there is a conflict of testimony, is to the effect that defendant drove her car at a speed of 30 miles an hour, in a zone of danger, not only so designated by warning flags, but one made so by reason of the fact that there was a barricade in the street requiring a driver to turn aside in order to pass, and by the further fact that there were men working in the street. In such a situation, reasonable care would require a driver to have his car under such control that he could stop it practically instantaneously. Driving at a rate of 30 miles an hour would require such a distance in which to stop that it can reasonably be said that whether or not the driver had the car under proper control under the circumstances was a question of fact for the jury. Lack of control and excessive speed, of course, do not mean the same thing, but under certain circumstances there may be a close affinity. Geiger v. Sanitary Farm Dairies, 146 Minn.

235, 178 N. W. 501; Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862; Lorah v. Rinehart, 243 Pa. 231, 89 A. 967. Defendants at the close of the charge made no objection to the submission of this question.

■ Defendants claim error in the court's instruction as to proximate cause, basing their contention on the court's failure to give the rule laid down in Restatement, Torts, § 431, which is commonly referred to as the substantial-factor rule. They also cite several Minnesota cases where that rule has been stated and applied. However, commencing with Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221, this court has applied the rule originally stated by Mr. Justice Mitchell in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641. Knight v. Powers Dry Goods Co. Inc. 225 Minn. 280, 30 N. W. (2d) 536; Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821; Rivera v. Mandsager, 228 Minn. 227, 36 N. W. (2d) 700. Under this court's recent holdings, no error can be predicated on this feature of the court's charge.

■ Defendants also complain that the court should have submitted separately the issue of whether defendants' car played any part whatever in the accident. Defendants had insisted and now insist that the car which did the damage was not their car. In its general charge, where the court told the jury that there appeared to be a sharp dispute between the parties as to the identity of the car which struck the timber, it said:

"* * * In general, the Kernkamps deny that the Kernkamp car hit the timber which caused the plaintiff's injuries, * * *."

After telling the jury that defendant claimed she stopped her car about 150 feet beyond the tracks, the court said defendant claimed—

"that about that time another car was coming on Franklin at a rapid rate; that this was the car that hit the timber that Mickelson was holding; * * *."

Further on it said:

"* * * If someone is injured in an accident and the person accused of causing it was not negligent or *did not cause the accident,* then, of course, no damages can be gotten from the person accused." (Italics supplied.)

In the supplementary charge given to the jury when it came back for further instructions, the court said:

"* * * But *if the accident happened through the negligence of anyone other than, Mrs. Kernkamp,* if she was not negligent and in anyway contributed, or her negligence in no way contributed to the happening of the accident, then, of course, the Kernkamps are not liable in damages regardless of who caused the happening of the accident." (Italics supplied.)

Since the court referred several times to defendants' claim that the injury to plaintiff resulted from the timber being struck by a car other than theirs, it would seem that the jury was sufficiently advised of defendants' claim and thus had it in mind. It would have been more satisfactory if the court had categorically called the attention of the jury to defendants' claim and had specifically stated to the jury that the first question which called for their determination was whether defendants' car or some other car struck the timber and caused the injury. However, since the court several times, as above set out, did call attention to the claim, we think no prejudice resulted.

Order affirmed.