YVONNE BOHNEN v. FRED GORR AND ANOTHER.
TOM BOHNEN v. SAME.[1]

April 20, 1951.

Nos. 35,389, 35,390.

[1]Reported in 47 N. W. (2d) 459.

*Francis W. Russell* and *Ahles & Ahles,* for appellants.
*John J. Sexton,* for respondents.

KNUTSON, JUSTICE.

Appeals from orders denying motions for a new trial.

Two actions arising out of the same collision, one by the injured party, a minor, by her father and natural guardian, to recover for personal injuries, and the other by the father to recover medical and hospital expenses, loss of earnings, and damage to articles of wearing apparel of his minor daughter, were consolidated for trial and have been heard together here. The case involving personal injuries is decisive of both, so reference herein will be made to the injured minor as plaintiff.

State highway No. 23 runs through the village of Cold Spring, this state, in an east-west direction. Red River street in said village intersects the highway at right angles. The highway right of way, as it goes through the village, is 66 feet wide, of which 24 feet in the center is paved with black-top tarvia. The right of way of Red River street at the point where it intersects highway No. 23 is 80 feet wide, of which the center 28 feet is likewise paved with black-top tarvia. Both the street and the highway are level and straight for at least two blocks in each direction from the intersection. Highway No. 23 is an arterial highway, protected by stop signs on Red River street both north and south of the intersection.

At the time of the accident, there were two quite large evergreen trees about 150 feet east of the center of Red River street on what would normally be the sidewalk line on the north side of the highway. The branches of these trees extended to the ground and out

from the trunk about six feet in each direction. The result was that the trees formed an obstruction to the view of anyone approaching the highway on the street from the north.

On August 28, 1948, at about 6 p. m., defendant Charles G. Waite was driving an automobile owned by defendant Fred Gorr in a westerly direction on highway No. 23. Plaintiff, who at that time was 18 years of age, left her home, which was located north of the intersection, intending to go on her bicycle to the home of a friend who lived south of the intersection. Waite and plaintiff were both familiar with the intersection. Plaintiff testified that she traveled south on Red River street about five or six feet west of the tarvia portion thereof; that as she approached the intersection she stopped ten feet north of the line of the highway; that she looked to the east a distance of 175 feet and saw nothing coming; and that she then looked to the west and saw nothing. She then proceeded to cross the highway, and when the front wheel of her bicycle was on the pavement she saw defendants' car coming from the east about 142 feet away. She testified that she was first going to apply her brakes and stop, but it looked like the car was coming fast, so she turned to the right and was struck after traveling three or four feet. That is all she remembered.

Waite testified that he was traveling about 25 miles per hour as he approached the intersection; that he first saw plaintiff after he had entered the intersection; that she was "right by the stop sign"; and that he then tried to turn to the left, but struck plaintiff with the front right corner of his right fender. He is corroborated in his testimony as to speed by his wife and two other passengers in the car. Except for Waite, none of the occupants saw plaintiff or the collision.

Defendants called as a witness one Gerald Zastrow, a 14-year-old boy who was sitting on the doorstep of his father's filling station, which is located at the northeast corner of the intersection. He actually saw the collision. He testified that he watched plaintiff as she approached the intersection riding her bicycle and that she

entered the intersection without stopping at all. According to his testimony, plaintiff slowed up some, but that it was "hardly noticeable." He first saw the automobile when it was opposite the filling station pumps and estimated that it was then traveling 40 miles per hour.

There is also testimony by the occupants of the automobile that they called on plaintiff at the hospital the night of the accident and that she then told them that "it was not our [defendants'] fault, that she [plaintiff] did not stop for the stop sign."

After the collision, defendants' car traveled about 570 feet down the highway before it came to a stop. Waite testified that he thought it would be better to let the car come to a gradual stop so that if anything were attached to the car it would not be injured by an abrupt stop.

Plaintiff called as a witness the village marshal, who lived on the southeast corner of the intersection. He stated that he heard the crash and rushed out of his house in time to see the car traveling west and that it was then going about 40 miles per hour.

The day was clear and the pavement dry. The sun was low in the west and interfered to some extent with Waite's driving.

There is no dispute that plaintiff suffered serious injuries. The jury returned a verdict for defendants. From a denial of plaintiff's motion for a new trial, this appeal has been taken.

While plaintiff assigns a number of errors, her argument on appeal simmers down to two points or contentions: (1) That the court erred in its instructions relating to the degree of care required of plaintiff in observing approaching traffic in the light of the undisputed evidence that two trees obstructed her view; and (2) that even if plaintiff was negligent the negligence of defendants constituted a superseding and intervening cause.

There can be no doubt that the verdict is justified by the evidence. The jury could well find that plaintiff entered the intersection without stopping at all. They could also find that defendants were guilty of no negligence proximately contributing to the collision;

but, even if defendants' negligence was established, plaintiff's contributory negligence is amply supported by the evidence.

M. S. A. 169.20, subd. 3, reads as follows:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

Section 169.30, after conferring on the commissioner of highways with reference to state trunk highways and local authorities with reference to other highways authority to designate through highways by erecting stop signs at the entrance thereto, then provides:

"Every driver of a vehicle and every motorman of a street car shall stop at such sign or at a clearly marked stop line before entering an intersection, except when directed to proceed by a police officer or traffic-control signal."

With respect to plaintiff's duty to stop, the court charged the jury as follows:

"* * * our arterial highways are protected by stop signs with which we are all familiar, and it was the duty of one approaching Highway No. 23 from the north at the place in question to stop at the entrance thereof and to yield the right-of-way to vehicles which had entered that intersection from the through highway or which were approaching so closely as to constitute an immediate hazard, the hazard of collision if both vehicles continued in their courses at the same speed. *After stopping for an arterial highway one seeking to pass through the intersection, after stopping and yielding in the manner I have just explained to you, has the right to proceed, and vehicles approaching the intersection by way of other highways*

*must yield the right-of-way. It is the duty of one approaching an arterial highway to stop at a point where one may effectively observe traffic approaching on the arterial. In this instance as Yvonne Bohnen approached Highway No. 23 at the time and place in question it was her duty under the law of this state to stop at the entrance to the highway and observe traffic approaching on that highway, and having stopped, if she did stop, and yielded the right-of-way to traffic approaching so closely as to constitute an immediate hazard, then she was at liberty to proceed onto or across Highway No. 23.*

\*　\*　\*　\*　\*

"It is the claim of the plaintiff Yvonne Bohnen that she stopped at some place to the north of Highway No. 23. Whether she stopped and where she stopped are questions of fact for you to determine. There are several pictures in evidence, three large ones and three small ones, which give you a clear view of the intersection in question. *You will observe the stop sign in the pictures, and you will bear in mind what I have told you the law is, that a stop be made at the entrance to an arterial. That may or may not mean something other than stopping before coming to an arterial. The law does not say stop before coming to an arterial but to stop at the entrance to an arterial. If Yvonne Bohnen did not stop in compliance with the rules of law I have given you that would be prima facie evidence of negligence.*" (Italics supplied.)

The italicized portion of the above is assigned as error.

Plaintiff seeks to bring this case within the rule of Mattfeld v. Nester, 226 Minn. 106, 119, 32 N. W. (2d) 291, 302, 3 A. L. R. (2d) 909, where, on account of a knoll on the highway, it was not possible to see any appreciable distance down the highway. We there said:

"\* \* \* he [the driver] could not be expected to stop, get out of his car, and go to the top of the knoll to reconnoiter before proceeding."

One of the main purposes of the statute requiring a vehicle to stop before entering a through highway is to afford the driver of the vehicle a reasonable opportunity to observe approaching traffic on the highway to be crossed or entered. There may be other purposes which could be mentioned,[2] but whatever they are they are intended to more effectively accomplish the main object of yielding the right of way to the driver traveling on the through highway. Conditions at intersections vary greatly. The opportunity for observing traffic varies according to the obstructions surrounding or bordering the intersection, and it is also affected by the contour of the intersecting highways. The variation in conditions has led many courts to adopt a rule requiring the driver of a vehicle approaching a through street to stop at a place where he may effectively observe approaching traffic.[3]

In Olson v. Anderson, 224 Minn. 216, 218, 28 N. W. (2d) 66, 68, we quoted with approval the following language of the Wisconsin court in Svenson v. Vondrak, 200 Wis. 312, 316, 227 N. W. 240, 242:

"'It was not enough to stop at the "Stop" sign. It was his duty to stop and to observe where stopping and observing would be efficient and meet the purpose of the "Stop" warning.'

"'* * * it is the duty of one approaching an arterial highway to stop at a point * * * where one may efficiently observe traffic approaching on the arterial highway."

---

[2]Cameron v. Goree, 182 Or. 581, 189 P. (2d) 596.

[3]Gartrell v. Harris' Coadm'xs, 300 Ky. 82, 187 S. W. (2d) 1019; Shoniker v. English, 254 Mich. 76, 235 N. W. 866; Garrison v. Burns, 178 Va. 1, 16 S. E. (2d) 306; Cameron v. Goree, 182 Or. 581, 189 P. (2d) 596; Cole v. Sherrill (La. App.) 7 So. (2d) 205; People v. Ubertini, 182 Misc. 634, 51 N. Y. S. (2d) 62; Angelo v. Lawson, 26 Wash. (2d) 198, 173 P. (2d) 124; Avent v. Tucker, 188 Miss. 207, 194 So. 596; Bokelkamp v. Olson, 254 Wis. 240, 36 N. W. (2d) 93; Ketzel v. Lazzini, 163 Pa. Super. 513, 63 A. (2d) 369 (duty to stop at intersection, not at sign); Olson v. Musselman, 127 Conn. 228, 15 A. (2d) 879 (duty to stop measured by standards of reasonable care); 2 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 1035.

78

In the later case of Bokelkamp v. Olson, 254 Wis. 240, 243-244, 36 N. W. (2d) 93, 94, the Wisconsin court reaffirmed this rule in the following language:

"* * * he [the motorist approaching an arterial highway] must not only stop before entering upon an arterial highway but he must stop and observe where an efficient observation may be had."

Here, the only testimony in the record as to the place where plaintiff stopped and as to the obstruction to her view was that the view to the east was obstructed from a point ten feet from the north line of the highway. From that point plaintiff could see 175 feet east on highway No. 23. From the photographs in evidence, it is obvious that had she stopped at or near the north line of the highway her view to the east would have been practically unobstructed. While the driver of a vehicle does not have to enter an arterial highway at his peril once he has complied with the law by stopping and making such reasonable observations as the conditions surrounding the intersection will permit,[4] nor does he have to leave his vehicle and reconnoiter,[5] he must exercise a degree of care commensurate with the extra hazards created by obstructions to his view surrounding the intersection.[6]

A stop sign is intended to warn motorists of the presence of a through or arterial highway. Our statute requires the driver of a vehicle approaching a through highway to stop *at the entrance* to such highway. Stop signs are usually erected some distance from the entrance to the through highway in order to afford approaching motorists an opportunity to stop before they reach the highway. Where the view of a highway is obstructed at the point where a stop sign is erected, it may not be sufficient to stop where the sign is erected in order to comply with the statute requiring a motorist to stop at the entrance to the highway.

[4]Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525.
[5]Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909.
[6]Wilmes v. Mihelich, 223 Minn. 139, 25 N. W. (2d) 833.

In this case, even if we assume that plaintiff did stop, the jury would have been justified in finding that she did not exercise that degree of care required of her in failing to stop at a point where she could effectively observe approaching traffic. The court's charge as a whole is substantially correct. Failure to qualify a general statement of the law is not grounds for a new trial where the omission is not called to the court's attention until after the jury has returned a verdict.[7] The charge must be read as a whole, and statements taken out of the context are not grounds for a new trial.[8]

We see little merit in plaintiff's contention that defendants' negligence was a superseding intervening cause. The contention is predicated largely on the testimony of Waite that he saw plaintiff before she entered the intersection and that he could have stopped or turned into the left lane and could thereby have avoided striking her. Waite's testimony was such that the jury would be justified in finding that he was negligent. It would not, however, excuse plaintiff from exercising that degree of care required of her. The case is no different from the ordinary intersection case where two vehicles traveling at right angles to each other enter the intersection and collide. Where the evidence is conflicting in such a case, the question of negligence and contributory negligence is nearly always for the jury. The court correctly defined proximate cause in connection with defendants' negligence as follows:

"'* * * proximate cause being the direct or immediate cause, that which causes a result directly and immediately or through a natural sequence of events without the intervention of another independent and efficient cause.'"

While the instruction respecting proximate cause might have been more clearly defined in connection with contributory negligence, the court did charge the jury:

"In considering the question of negligence or contributory negligence, as the case may be, you must keep in mind that there must be

[7]MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221.
[8]Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807.

a causal connection between the acts complained of and the injuries sustained. One may place himself in a position of peril and still injury may result from other causes. For that reason you must consider and determine the question of causal relationship. In other words, you will determine what was the proximate cause of the injuries which the plaintiff sustained at the time and place in question."

We have carefully examined the entire charge and all assignments not specifically mentioned. Taken as a whole, the charge adequately presents the law pertaining to defendants' negligence and plaintiff's contributory negligence. Under the evidence, both questions were properly submitted to the jury. We find no reversible error. At best, the portions of the charge now complained of were such verbal inaccuracies as to require timely objection so that they could be corrected before the jury retired. Storey v. Weinberg, 226 Minn. 48, 31 N. W. (2d) 912; Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; Mickelson v. Kernkamp, 230 Minn. 448, 42 N. W. (2d) 18; MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221.

Affirmed.