*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1208**

State of Minnesota,
Respondent,

vs.

Johannes Marliem,
Appellant.

**Filed June 1, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-VB-13-2275

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Samuel J. Clark, St. Paul City Attorney, Kyle A. Lundgren, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Keith A. Dotseth, Kevin W. DeVore, Jennifer L. Young, Paula Duggan Vraa, Larson • King, LLP, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**SCHELLHAS**, Judge

Appellant challenges his petty misdemeanor conviction of failure to stop at a stop sign. We affirm.

**FACTS**

While approaching an intersection from the south, an on-duty police officer saw a vehicle approach the intersection from the west and enter without stopping at a preceding stop sign. The officer stopped the vehicle and cited its driver, appellant Johannes Marliem, for failure to stop at a stop sign. At a court trial on the citation, Marliem testified that he stopped the vehicle about 30 feet before the stop sign and then proceeded slowly into the intersection. The district court found that Marliem "stopped 30 feet behind the stop sign and then proceeded through or by the sign onto the road without any further stop" and found Marliem guilty. This appeal follows.

**D E C I S I O N**

Minnesota law provides that "[e]very driver of a vehicle shall stop at a stop sign . . . before entering the intersection." Minn. Stat. § 169.30(b) (2012). Marliem argues that section 169.30(b) requires only that a driver stop a "reasonable distance" before a stop sign and that he "fully complied with the statute" by "stopp[ing] at a distance from which he could see the entire intersection and decide that it was safe to proceed." Rejecting Marliem's argument, the district court concluded that the only reasonable interpretation of the statutory language, "at a stop sign," is "immediately next to or perpendicular to a stop sign."

2

Whether a defendant's conduct was prohibited by the statute under which he was charged is an issue of statutory interpretation subject to de novo review. *State v. Nelson*, 842 N.W.2d 433, 436 (Minn. 2014). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014); *see also* Minn. Stat. § 645.16 (2014) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.").

> If the Legislature's intent is clear from the unambiguous language of the statute, [appellate courts] apply the statute according to its plain meaning. . . . But if a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous, and [appellate courts] will consider other factors to ascertain the Legislature's intent.

*Staab*, 853 N.W.2d at 716–17.

Undefined "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2014). Applying that interpretative canon to this case, we believe that the common and approved usage of "at" includes the district court's reading of "at" to mean "immediately next to or perpendicular to," but does not necessarily exclude Marliem's reading of "at" as embracing a proximity of 30 feet. *See The American Heritage Dictionary of the English Language* 112, 883, 1174 (4th ed. 2006) (defining "at" as "in *or* near the location of" or "[i]n *or* near the position of," defining "in" as "[w]ithin the limits, bounds, or area of," and defining "near" as "within a short distance or interval in space or time" (emphasis added)). Accordingly, we proceed on the assumption that section 169.30(b) is ambiguous

and "consider extrinsic canons of statutory construction to ascertain the statute's meaning." *State v. Rick*, 835 N.W.2d 478, 485 (Minn. 2013).

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering," among other things, "the object to be attained" by the law and "the consequences of a particular interpretation" of the law. Minn. Stat. § 645.16. The evident object of section 169.30 is the safe flow of intersection traffic. *Cf.* Minn. Stat. § 169.30 (2012) (providing for designation of stop intersections by erecting stop signs and mandating drivers' compliance with stop signs "except when directed to proceed by a police officer or traffic-control signal"); *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 243 (Minn. App. 2010) ("The purpose of traffic regulation is to protect against traffic hazards . . . ." (quotation omitted)). This object may be attained only if drivers are able to see the other vehicles in and around the intersection. And typically the closer one is to an object, the more easily one can see it. Because a driver who stops closer to a stop sign preceding an intersection is necessarily closer to other vehicles in and around that intersection than is a driver who stops farther away from the stop sign, the district court's interpretation of section 169.30(b) promotes the safe flow of intersection traffic.

Conversely, Marliem's interpretation of section 169.30(b) could lead to drivers' difficulty in seeing other vehicles in and around an intersection. One foreseeable consequence would be that a vehicle may not be within a driver's field of vision when the

4

vehicle stops a "reasonable distance" before the stop sign.[1] When the driver finally sees the vehicle approaching the intersection, the driver—not knowing that the vehicle has *already* stopped for the stop sign—may expect the vehicle to stop and may proceed to drive according to that expectation. Such misunderstandings would impede the safe flow of intersection traffic. Both the object to be attained by the statute and the consequences of Marliem's interpretation therefore suggest that the legislature's mandate to stop "at" a stop sign is intended to require drivers to stop their vehicles as close as safely possible to, rather than a "reasonable distance" before, the sign.

Marliem also argues that section 169.30(b) "is unquestionably vague as it relates to the distance at which a driver should stop before a stop sign" and, as such, "should be construed narrowly according to the rule of lenity." But as the state points out, petty misdemeanor traffic regulations are not penal statutes subject to the rule of strict construction. *See* Minn. R. Crim. P. 23.06 ("A petty misdemeanor is not considered a crime."); *State v. Jones*, 649 N.W.2d 481, 484 (Minn. App. 2002) (stating that "traffic regulations in Minnesota are petty misdemeanors unless otherwise specified"). "Rather, [appellate courts] interpret a petty misdemeanor traffic regulation as [they] would interpret a public health and safety statute, that is, liberally to effect its purpose." *Jones*, 649 N.W.2d at 484 (quotation omitted).

To support his statutory interpretation, Marliem cites *Bohnen v. Gorr*, 234 Minn. 71, 76, 47 N.W.2d 459, 462 (1951), arguing that the supreme court held that traffic

---

[1] Indeed, Marliem asserts that this is precisely what happened here, claiming that he "completed a full stop about thirty feet before the intersection" and the officer—as she approached the intersection—"did not see . . . Marliem's vehicle stop."

5

regulations require only that a driver stop a reasonable distance before a stop sign, which is a distance from which the driver may effectively observe approaching traffic. While we acknowledge that "[j]udicial construction of a statute becomes part of the statute as though it were written therein," *Staab*, 853 N.W.2d at 717, an examination of *Bohnen* belies Marliem's characterization of its holding.

In *Bohnen*, a jury returned verdicts for the defendant in a personal-injury action arising from a collision in an intersection. 234 Minn. at 72–74, 47 N.W.2d at 460–61. The collision occurred as the defendant was driving a vehicle on an arterial highway and the plaintiff was riding her bicycle on a street that crossed the highway. *Id.* at 72–73, 47 N.W.2d at 461. Stop signs protecting the highway were located on the street. *Id.* The plaintiff testified that "as she approached the intersection [from the north,] she stopped ten feet north of the line of the highway," saw no oncoming traffic, and entered the intersection, where the defendant struck her. *Id.* at 73, 47 N.W.2d at 461.

The plaintiff argued that the district court erred by instructing the jury that "[i]t is the duty of one approaching an arterial highway to stop at a point where one may effectively observe traffic approaching on the arterial" and that "the law is[] that a stop be made at the entrance to an arterial." *Id*. at 75–76, 47 N.W.2d at 462. The supreme court addressed sections 169.20, subdivision 3, and 169.30, and rejected the plaintiff's argument.[2] *Id.* at 75–80, 47 N.W.2d at 462–64. The court reasoned that "[o]ne of the main purposes of the statute requiring a vehicle to stop before entering a through highway

_____

[2] Minnesota Statutes section 169.20, subdivision 3, is now Minn. Stat. § 169.20, subd. 3(a)–(b) (2012). Minnesota Statutes section 169.30 is now section 169.30(a)–(b). Although renumbered, the content of both statutes remains essentially unchanged.

is to afford the driver of the vehicle a reasonable opportunity to observe approaching traffic on the highway" and concluded that "[w]here the view of a highway is obstructed at the point where a stop sign is erected, it may not be sufficient to stop where the sign is erected in order to comply with the statute requiring a motorist to stop at the entrance to the highway." *Id.* at 77–78, 47 N.W.2d at 463–64.

Section 169.20, subdivision 3(a), provides that "[t]he driver of a vehicle shall stop as required by this chapter at the entrance to a through highway." The requirement in section 169.20, subdivision 3(a), to stop at a through highway's entrance, although related to section 169.30(b), is distinct from section 169.30(b)'s requirement to "stop at a stop sign . . . before entering [an] intersection." *Cf. Kolatz v. Kelly*, 244 Minn. 163, 171, 69 N.W.2d 649, 655 (1955) (stating that "after a car has once stopped for a through street in response to the stop sign *and* the motorist has exercised the ordinary and reasonable care required under § 169.20, subd. 3, before entering commensurate with the care required under the circumstances the usual rules in regard to right of way and speed prevail" (emphasis added)); *Bohnen*, 234 Minn. at 78, 47 N.W.2d at 464 (noting that "[s]top signs are usually erected some distance from the entrance to the through highway in order to afford approaching motorists an opportunity to stop before they reach the highway" and stating that "it may not be sufficient to stop where the sign is erected in order to comply with the statute requiring a motorist to stop at the entrance to the highway").

*Bohnen* stands for the proposition that stopping at a stop sign preceding the entrance to a through highway, in compliance with section 169.30(b), does not

7

necessarily constitute stopping at the entrance to the highway, as required by section 169.20, subdivision 3(a), "[w]here the view of [the] highway is obstructed at the point where [the] stop sign is erected." *See* 234 Minn. at 78, 47 N.W.2d at 464. That proposition does not support Marliem's "reasonable distance" interpretation of section 169.30(b). We conclude that the district court properly rejected Marliem's statutory interpretation.

**Affirmed.**